UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

AREZOU MANSOURIAN; LAUREN
MANCUSO; NANCY NIEN-LI CHIANG;
and CHRISTINE WING-SI NG; and
all those similarly situated,

                                     NO. CIV. 2-03-02591-FCD-EFB

      Plaintiffs,

    v.                             <u>MEMORANDUM AND ORDER</u>

BOARD OF REGENTS OF THE
UNIVERSITY OF CALIFORNIA at
DAVIS; LAWRENCE "LARRY"
VANDERHOEF; GREG WARZECKA; PAM
GILL-FISHER; ROBERT FRANKS;
and LAWRENCE SWANSON,

      Defendants.

----oo0oo----

    This matter is before the court on defendants' motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) filed on June 5, 2007.  Plaintiffs oppose defendants' motion.  The court heard oral argument on the motion on July 27, 2007 and allowed the parties to submit supplemental briefing addressing new arguments raised at the hearing.  Based upon the submissions of the parties and the arguments made by counsel, and for the reasons set forth below, defendants' motion

for judgment on the pleadings is GRANTED in part and DENIED in part.

## BACKGROUND[1]

Plaintiffs Arezou Mansourian ("Mansourian"), Lauren Mancuso ("Mancuso"), and Christine Wing-Si Ng ("Ng") (collectively "plaintiffs")[2] are former female wrestlers at the University of California, Davis ("UCD").  (Pls.' Compl. [Docket #1] ("Compl."), filed Dec. 18, 2003, at 5-7.)  Plaintiffs filed this action on behalf of themselves and a putative class on December 18, 2003.  Plaintiffs named as defendants in their individual and official capacities the following parties: the Regents of the University of California ("UCD"); the Chancellor of the University, Larry Vanderhoef; the Athletic Director at the University, Greg Warzecka; Associate Athletic Directors of the University, Pam Gill-Fisher and Lawrence Swanson; and former Associate Vice Chancellor, Student Affairs, Robert Franks (collectively, the "individual defendants").  (Compl. at 2.)

In the 1990s, varsity wrestling at UCD included both women and men.  (Id. at ¶ 82.)  Female wrestlers at UCD received high quality coaching, wrestled under women's freestyle rules rather than men's collegiate rules, and received the various benefits of varsity status.  (Id. at ¶¶ 82, 85.)  Some of UCD's female wrestlers went on to national and international acclaim after having trained at and received the benefits of wrestling at UCD.

---

[1]     The following facts are primarily derived from plaintiffs' complaint filed December 18, 2003.

[2]     Plaintiff Nancy Nien-Li Chiang ("Chiang") voluntarily dismissed all claims in this action on June 12, 2007.  (Mem. & Order [Docket #195], filed July 12, 2007).

1  (Id. at ¶¶ 85-87.)

2       Plaintiffs participated in high school wrestling and chose
3  to attend UCD because it offered them the opportunity to
4  participate in wrestling while in college.  (Compl., ¶¶ 9-11, 24-
5  51.)  Mansourian and Ng filled out the NCAA and UCD paperwork
6  necessary for intercollegiate athletics, completed the weight
7  certification requirements for intercollegiate wrestling, and
8  participated in UCD's wrestling program for about 2 years.  (Id.
9  at ¶¶ 27-30, 46-50, 55-59.)  As varsity wrestlers, plaintiffs
10 received benefits such as medical and athletic training services,
11 laundry services, academic tutoring services, strength and
12 conditioning coaching, wrestling coaching, insurance, access to
13 the weight room, and access to varsity facilities.  (Id. at ¶¶
14 33, 51, 58.)  Mancuso was recruited to wrestle for UCD and
15 awarded an athletic scholarship.  (Id. ¶ 39.)  She enrolled,
16 filled out the necessary paperwork, and received the required
17 certifications to participate in intercollegiate wrestling.  (Id.
18 at ¶¶ 40-42.)  Shortly thereafter, however, defendants eliminated
19 women from UCD's wrestling program, and Mancuso was denied her
20 scholarship.  (Id. at ¶¶ 59-60.)

21      During the 2000-2001 academic year, defendants eliminated
22 wrestling athletic participation opportunities for female, but
23 not male, students (the "No Females Directive").  (Id. at ¶¶ 60-
24 62.)  Plaintiffs and then-wrestling coach Michael Burch protested
25 this decision.  Plaintiffs met with and/or complained to
26 defendants, asserting that the No Females Directive constituted
27 illegal sex discrimination.  Defendants ignored the complaints.
28 (Id. at ¶¶ 63-69.)  Plaintiffs filed a complaint with the Office

for Civil Rights of the United States Department of Education ("OCR") in the Spring of 2001. (<u>Id.</u> at ¶ 67.) Defendants later agreed to rescind the No Females Directive and to allow women to participate in wrestling. (<u>Id.</u> at ¶ 70-74.)

Plaintiffs, including newcomer Mancuso, enrolled at UCD for the 2001-2002 academic year in reliance upon defendants' promised reinstatement of female wrestling participation opportunities. They filled out their NCAA and UCD eligibility paperwork, completed the weight certification requirements for varsity wrestling, and were deemed eligible. (<u>Id.</u> at ¶ 75.) Unfortunately, plaintiffs returned to a wrestling team with a new coach who did not support women wrestlers and failed to coach them or treat them like the male wrestlers. (<u>Id.</u> at ¶¶ 75-76.) Defendants informed plaintiffs that to participate in wrestling they would have to be part of a mixed gender team and would have to beat the men at their weight class under men's collegiate-style rules, even though the women had previously only participated as part of a women's wrestling program (not a mixed gender team) using international freestyle wrestling rules. (<u>Id.</u> at ¶ 77.) Plaintiffs again complained, but defendants refused and continue to refuse to remedy the situation and to provide women's wrestling opportunities. (<u>Id.</u> at ¶¶ 75-79.) As a result, to date, no women are allowed to participate in UCD wrestling. (<u>Id.</u>)

As a result of defendants' actions, plaintiffs could not attend wrestling practice, could not use the wrestling facilities or weight room, lost their laundry benefits, lost their insurance they received as wrestling athletes, were banned from receiving

4

instruction from the UCD coaching staff, and were denied athletic training and other medical benefits they received as UCD wrestlers.  (Id. at ¶ 61.)  Plaintiffs also lost the academic credit associated with UCD wrestling athletes, and were denied early class registration.  (Id. at ¶ 62.)

Subsequently, plaintiffs brought this action and alleged six claims for relief: (1) violation of Title IX for failure to provide equal athletic opportunities for women; (2) violation of Title IX for failure to provide equal athletic financial assistance to women; (3) retaliation in violation of Title IX; (4) violation of 42 U.S.C. § 1983 based on the Equal Protection clause of the U.S. Constitution; (5) violation of the California Unruh Civil Rights Act; (6) violation of public policy based upon violations of the California Constitution and the California Education Code.  (Id. at 35-53).  Defendants filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) on March 5, 2004.  (Defs.' Mot. to Dismiss [Docket #13-15], filed March 5, 2004.)  The court denied the motion on May 6, 2004. (Mem. & Order [Docket #25], filed May 6, 2007.)

Unfortunately, throughout the course of this litigation, both defendants' and plaintiffs' counsel have suffered illnesses. In October 2005, both parties stipulated to an extension of deadlines due to defendants' lead counsel's illness, which made her unavailable to travel to depositions over the following two months.  (Stipulation [Docket #57], filed Oct. 28, 2005.)  On April 14, 2006, one week before plaintiffs' motion for class certification was to be heard by the court, plaintiffs' counsel filed an ex parte motion to stay and extend scheduling based upon

plaintiffs' counsel's serious health issues.  (Ex Parte Mot. to Stay [Docket #117], filed Apr. 14, 2006.)  The court granted plaintiffs' motion, and thereafter, on June 6, 2006, the parties stipulated to extend the stay and related scheduling matters. (Order [Docket #125], filed Apr. 18, 2006; Stipulation to Extend Stay and Related Scheduling Matters [Docket #130], filed June 6, 2006.)  On July 21, 2006, plaintiffs moved to extend the stay in order to find new counsel because of plaintiffs' counsel's serious medical condition, which the court granted.  (Motion to Extend [Docket #134], filed July 21, 2006; Order [Docket #137], filed July 24, 2006.)  On August 18, 2006, Monique Oliver filed a notice of appearance on behalf of plaintiffs.  (Docket #140, filed Aug. 18, 2006.)  On August 23, 2006, and October 19, 2006, the parties stipulated to extend the stay based upon the appearance of new counsel in this matter.  (Docket #141, 147.)

     On February 2, 2007, plaintiffs filed a motion to amend the complaint to add new plaintiffs, who would also be class representatives, and related allegations.  (Pls.' Mot. to Amend [Docket #158], filed Feb. 2, 2007.)  The court denied plaintiffs' motion.  (Mem. & Order [Docket #175], filed Mar. 20, 2007.) Subsequently, by stipulation of both parties, the class claims in this action were dismissed on June 12, 2007.  (Mem. & Order [Docket #195], filed June 12, 2007.)  Defendants filed the instant motion on June 5, 2007.  (Docket #188.)  At oral argument, plaintiffs' counsel conceded that plaintiffs no longer seek injunctive relief.  However, plaintiffs do claim that they are entitled to monetary and punitive damages for defendants' denial of educational benefits, lost scholarship money, and the

humiliation, emotional distress, and related harm caused by
defendants' sex discrimination.  (Id. at 55-56.)

### STANDARD

Rule 12(c) of the Federal Rules of Civil Procedure provides,
in relevant part, that "[a]fter the pleadings are closed but
within such time as not to delay the trial, any party may move
for judgment on the pleadings." Fed. R. Civ. Proc. 12(c).
Moreover, Rule 12(h)(2) of the Federal Rules of Civil Procedure
provides in relevant part that a defense of failure to state a
claim upon which relief can be granted, may be made by motion for
judgment on the pleadings.  Fed. R. Civ. Proc. 12(h).

When considering a motion for judgment on the pleadings
presenting a defense of failure to state a claim upon which
relief can be granted, a court should employ those standards
normally applicable to a motion to dismiss for failure to state a
claim upon which relief can be granted pursuant to Rule 12(b)(6)
of the Federal Rules of Civil Procedure. See Enron Oil Trading &
Transp. Co. v. Walbrook Ins. Co., Ltd., 132 F.3d 526, 528-29 (9th
Cir. 1997); 5B Wright & Miller, Federal Practice and Procedure,
Civil § 1368 at 515-16 (3d ed. 2007).  On a motion to dismiss,
the allegations of the complaint must be accepted as true.  Cruz
v. Beto, 405 U.S. 319, 322 (1972).  The court is bound to give
plaintiff the benefit of every reasonable inference to be drawn
from the "well-pleaded" allegations of the complaint.  Retail
Clerks Int'l Ass'n v. Schermerhorn, 373 U.S. 746, 753 n.6 (1963).
Thus, the plaintiff need not necessarily plead a particular fact
if that fact is a reasonable inference from facts properly
alleged.  See id.

7

1    Nevertheless, it is inappropriate to assume that the

2  plaintiff "can prove facts which it has not alleged or that the

3  defendants have violated the . . . laws in ways that have not

4  been alleged." Associated Gen. Contractors of Calif., Inc. v.

5  Calif. State Council of Carpenters, 459 U.S. 519, 526 (1983).

6  Moreover, the court "need not assume the truth of legal

7  conclusions cast in the form of factual allegations." United

8  States ex rel. Chunie v. Ringrose, 788 F.2d 638, 643 n.2 (9th

9  Cir. 1986).

10    Ultimately, the court may not dismiss a complaint in which

11  the plaintiff has alleged "enough facts to state a claim to

12  relief that is plausible on its face." Bell Atlantic Corp. v.

13  Twombly, 127 S.Ct. 1955, 1974 (2007).  Only where a plaintiff has

14  not "nudged [his or her] claims across the line from conceivable

15  to plausible," is the complaint properly dismissed. Id. "[A]

16  court may dismiss a complaint only if it is clear that no relief

17  could be granted under any set of facts that could be proved

18  consistent with the allegations." Swierkiewicz v. Sorema N.A.,

19  534 U.S. 506, 514 (2002) (quoting Hudson v. King & Spalding, 467

20  U.S. 69, 73 (1984)).

21    In ruling upon a motion to dismiss, the court may consider

22  only the complaint, any exhibits thereto, and matters which may

23  be judicially noticed pursuant to Federal Rule of Evidence 201.

24  See Mir v. Little Co. Of Mary Hospital, 844 F.2d 646, 649 (9th

25  Cir. 1988); Isuzu Motors Ltd. v. Consumers Union of United

26  States, Inc., 12 F. Supp. 2d 1035, 1042 (C.D. Cal. 1998).

27  /////

28  /////

**ANALYSIS**

**I.   Title IX**

Alleged violations of Title IX in the area of athletics are typically divided into claims of either equal treatment or effective accommodation.  Pederson v. Louisiana State Univ., 213 F.3d 858, 865 n.4 (5th Cir. 2000).  This division arises from regulations promulgated by Title IX.  Id.  Claims under an equal treatment theory "derive from the Title IX regulations found at 34 C.F.R. §§ 106.37(c) 106.41(c)(2)-(10), which call for equal provision of [] athletic benefits and opportunities among the sexes."  Boucher v. Syracuse Univ., 164 F.3d 113, 115 n.2 (2d Cir. 1999).  Claims brought under an effective accommodation theory stem from the implementing regulations that provide:

> in determining whether equal athletic opportunities for members of both sexes are available, the Office of Civil Rights of the Department of Education (the office charged with enforcement of Title IX) will consider, among other factors, "[w]hether the selection of sports and levels of competition effectively accommodate the interests and abilities of members of both sexes."

Pederson, 213 F.3d at 865 n.4 (citing Boucher, 164 F.3d at 115 n.1; 34 C.F.R. § 106.41(c)(1)).

As clarified by both arguments made at hearing and the supplemental submissions of the parties, plaintiffs are asserting claims against defendant UCD under both an unequal treatment theory and an ineffective accommodation theory.  Defendant UCD moves for judgment on the pleadings as to both theories.

**A.   Unequal Treatment Claims**

Pursuant to an "unequal treatment" theory, plaintiffs seek damages arising out of the No Females Directive issued in the fall of 2000; an alleged broken promise in June 2001 to reinstate

9

the female wrestling program at UCD; the failure to renew the contract of their wrestling coach; and requiring females to compete for membership on the UCD wrestling team under the same terms and conditions as male athletes in the fall of 2001. Plaintiffs contend that these were discriminatory acts made by defendant pursuant to a "policy and practice" of discrimination, and as such, these allegations establish a "continuing violation" of federal law. (Pl.'s Opp'n, filed July 13, 2007, at 5.) Conversely, defendant asserts that plaintiffs merely allege a series of discrete acts. (Def.'s Reply to Pl.'s Opp'n ("Reply"), filed July 20, 2007, at 4-6.)  According to defendant UCD, the last discrete act occurred on October 16, 2001 with the resolution of plaintiffs' OCR complaint, and thus, plaintiffs' claims tolled in October 2002.  Id. at 5.

### 1.  Discrete Acts

"A discrete retaliatory or discriminatory act 'occurred' on the day that it happened."  National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 110 (2002).  Where a discrete act is the basis for a discrimination claim, the timely filing period begins to run from that date.  Id.  Such acts "are not actionable if time barred, even when they are related to acts alleged in timely filed charges."  Id. at 113.

In Morgan, the Supreme Court found that, with regard to the applicability of the continuing violation doctrine, the term "practice" does not convert related discrete acts into a single unlawful practice for the purposes of timely filing.  536 U.S. 101, 111 (2002).  The Court defined a "discrete act" of discrimination as one that constitutes a separate, actionable

unlawful employment practice that is temporally distinct. Id. at
114.  In the employment context, the Court pointed to
"termination, failure to promote, denial of transfer, [and]
refusal to hire" as examples of such discrete acts. Id. The
Court held that the cause of action accrued when the discrete,
unlawful action occurred, and that "a new violation does not
occur, and a new charging period does not commence, upon the
occurrence of subsequent nondiscriminatory acts that entail
adverse effects resulting from the past discrimination." See
Ledbetter v. Goodyear Tire & Rubber Co., Inc., 127 S. Ct. 2162,
2169 (2007) (discussing the Court's holding in Morgan and other
related cases).

Subsequently, the Supreme Court has reiterated that the
current effects of discriminatory conduct "cannot breathe life
into [that] prior, uncharged conduct." Id. In Ledbetter, a
female retiree sued her former employer under Title VII and the
Equal Pay Act for alleged sex discrimination reflected in
negative evaluations, which resulted in her receiving lower
paychecks than her male counterparts. Id. at 2163-64.  The
plaintiff argued that each of the paychecks she received
constituted a new, actionable discriminatory act. Id. at 2169.
The Court rejected this argument, holding that the actionable
discrete conduct occurred when the pay decision was made, not
when a paycheck was issued pursuant to that allegedly
discriminatory decision. Id. at 2175-76.

In this case, the heart of plaintiffs' Title IX claims based
upon an unequal treatment theory stems from discrete acts taken
against three women wrestlers over roughly a year's time.

Plaintiffs claim that defendant UCD first blatantly excluded them
from the wrestling program and then failed to give them a fair
opportunity to obtain a position on the team by requiring them to
compete against men, using men's rules.  These claims are akin to
a claim of termination and failure to hire or promote in the
employment context.  As such, they are appropriately
characterized as discrete acts.  Plaintiffs further claim that
the discriminatory acts continued because they were unable to
wrestle each and every day that they were students at UCD.
However, this inability was merely the *effect* of defendant's
prior, allegedly discriminatory conduct.  As set forth in
<u>Ledbetter</u>, the current effects of discriminatory conduct "cannot
breathe life into [that] prior, uncharged conduct."  127 S. Ct.
at 2169.

The rationale applied by the Ninth Circuit in <u>Cherosky v.</u>
<u>Henderson</u> is similarly applicable to this case.  330 F.3d 1243
(9th Cir. 2003).  In <u>Cherosky</u>, current and former employees
brought suit against the United States Postal Service under the
Americans with Disabilities Act, challenging the denial of their
requests to wear respirators while on duty.  <u>Id.</u> at 1244-45.  The
Ninth Circuit found that the heart of the plaintiffs' complaint
stemmed from the individualized decisions to deny the plaintiffs'
requests and, as such, were discrete acts.  <u>Id.</u> at 1247.
Similarly, in this case, the gravamen of plaintiffs' complaint
stems from individualized decisions by defendant regarding the
UCD wrestling program, which affected each individual plaintiff.
As such, these decisions are discrete acts.

/////

1    Plaintiffs contend that the reasoning of <u>Morgan</u>, <u>Ledbetter</u>,

2  and <u>Cherosky</u> does not apply in this case because each of those

3  cases arose out of an employment relationship between the

4  plaintiffs and the defendants. (Pls.' Supp. Mem., filed Aug. 10,

5  2007, at 7-9.)  The crux of plaintiffs' argument is that because

6  Title VII claims arise in the employment context, the Supreme

7  Court's holdings in <u>Morgan</u> and <u>Ledbetter</u> should not control the

8  analysis of plaintiffs' Title IX unequal treatment claims.[3]

9    Plaintiffs' argument is unpersuasive.  Title VII and Title

10  IX are sufficiently analogous that the "discrete discriminatory

11  acts" analysis prescribed in <u>Morgan</u> applies to the unequal

12  treatment claims brought by plaintiffs in this case.  Both Title

13  VII and Title IX address sex discrimination, and the legislature

14  has emphasized the close relationship between the two.

15  Specifically, the House Report on Title IX explicitly referenced

16  the relationship between Title VII and Title IX:

17        Title VII . . . specifically excludes educational
          institutions from its terms. [Title IX] would remove
18        that exemption and bring those in education under the
          equal employment provision.
19

20  Education Amendments Act of 1972, Pub. L. No. 92-318, 1972

21  /////

22  /////

23  _____

24        [3]    Plaintiffs, citing <u>Gebser v. Lago Vista Indep. School
      Dist.</u>, assert that under Title IX, courts "have a measure of
25    latitude to shape a sensible remedial scheme that best comports
      with the statute."  524 U.S. 274, 284 (1998).  This motion does
26    not raise issues regarding remedies, and thus, plaintiffs'
      reliance on <u>Gebser</u> in this context is misplaced.  While <u>Gebser</u>
27    demonstrates the "manifest" difference between Title VII and
      Title IX in terms of available remedies, the Court's analysis in
28    <u>Gebser</u> did not address the analytical framework for assessing a
      Title IX claim on the merits.  <u>Id.</u>

13

U.S.C.C.A.N. (86 Stat. 253) 2462, 2512.[4]  The purposes that Titles VII and Title IX are both intended to serve, eliminating discrimination and providing protection against it, suggest that Title VII's analytical framework with respect to discrete acts should be applied to a Title IX claim for sex discrimination. See Mabry v. State Bd. of Community Colleges & Occupational Educ., 813 F.2d 311, 316 n. 6 (10th Cir. 1987) ("Because Title VII prohibits the identical conduct prohibited by Title IX, i.e., sex discrimination, we regard it as the most appropriate analogue when defining Title IX's substantive standards . . . ."), cert. denied, 484 U.S. 849 (1987); see also Patricia H. v. Berkeley Unified School Dist., 830 F. Supp. 1288, 1293 (N.D. Cal. 1993) ("As the Supreme Court acknowledged in [Franklin], a student should have the same protection in school that an employee has in the workplace.").

Further, the Ninth Circuit's decision in Cherosky reinforces the conclusion that the Morgan Court's significant restriction of the continuing violations doctrine applies outside the Title VII context.[5]  330 F.3d at 1246.  "Although Morgan involved Title VII of the Civil Rights Act of 1964, the Supreme Court's analysis of the continuing violations doctrine is not limited to Title VII actions.  It applies with equal force to the Rehabilitation Act and to actions arising under other civil rights laws."  Id.

---

[4]    On the day Title IX was enacted, Senator Bayh stated, "this amendment [applies] Title VII's widely recognized standards of equality of employment opportunity to educational institutions."  118 Cong. Rec. 5807 (1972).

[5]    In restricting the continuing violations doctrine, the Court applied the "discrete discriminatory acts" analysis. Morgan, 536 U.S. at 122.

1  (emphasis added); <u>see</u> <u>e.g.</u>, <u>RK Ventures, Inc. v. City of Seattle</u>,

2  307 F.3d 1045 (9th Cir. 2002) (applying <u>Morgan</u>'s rationale in an

3  action brought pursuant to 42 U.S.C. § 1983); <u>Kaster v. Safeco</u>

4  <u>Ins. Co. of Am.</u>, 212 F. Supp. 1264 (D. Kan. 2002) (applying

5  <u>Morgan</u>'s rationale to the Age Discrimination in Employment Act).

6      Therefore, plaintiffs' claims under the unequal treatment

7  theory arise out of a series of discrete acts and do not arise

8  out of a continuing violation of federal law.

9                  **2.   Pattern and Practice**

10     Alternatively, plaintiffs argue that the Court's holding in

11  <u>Morgan</u> does not apply to their case because they are alleging a

12  pattern or practice theory of the type explicitly excluded from

13  the Court's analysis and opinion in <u>Morgan</u>.   536 U.S. at 115 n.9.

14  Defendant contends that, while evidence of such a claim can

15  support an individual's claim of discrimination, the pattern or

16  practice method of proof cannot apply to a private, non-class

17  cause of action.   Whether individual plaintiffs can rely on a

18  pattern or practice method of proof is an issue that has not been

19  addressed by the Ninth Circuit.

20     "A pattern or practice case is not a separate and free-

21  standing cause of action, . . . but is really 'merely another

22  method by which disparate treatment can be shown." <u>Celestine v.</u>

23  <u>Petroleos de Venezuela SA</u>, 266 F.3d 343, 355 (5th Cir. 2001)

24  (citing <u>Mooney v. Aramco Servs. Co.</u>, 54 F.3d 1207, 1219 (5th Cir.

25  1995).   Specifically, a pattern or practice theory of

26  discrimination carries with it a different method of proof than

27  an individual claim of discrimination.   <u>See</u> <u>Int'l Brotherhood of</u>

28  <u>Teamsters v. United States</u>, 431 U.S. 324, 334-40; <u>Lowery v.</u>

Circuit City Stores, Inc., 158 F.3d 742, 759 (1998) (overruled on
other grounds).   In these cases, typically, the government
(either through the EEOC or the Attorney General) or a plaintiff
class charges systematic discrimination against a protected
group.  Lowery, 158 F.3d at 759; see Bacon v. Honda of Am. Mfg.,
Inc., 370 F.3d 565, 575 (6th Cir. 2004); Celestine, 266 F.3d at
355 (5th Cir. 2001).   The plaintiff bears the initial burden of
demonstrating a prima facie case by a preponderance of the
evidence that the defendant's standard operating procedure
included discriminatory practices.  Teamsters, 431 U.S. at 336.
"At this initial 'liability' stage, the [plaintiff] is not
required to prove that any particular employee was a victim of
the pattern or practice; it need only establish a *prima facie*
case that such a policy existed."  Lowery, 158 F.3d at 760
(citing Teamsters, 431 U.S. at 360).   Once such a prima facie
case is established, the burden shifts to the defendant to
demonstrate that the plaintiff's showing is either inaccurate or
insignificant.  Id.  If the defendant fails to rebut the
plaintiff's case "the resulting finding of a discriminatory
pattern or practice gives rise to an inference that all employees
subject to the policy were its victims and are entitled to
appropriate remedies."  Id. at 759 (citing Teamsters, 431 U.S. at
362).   Such a finding justifies an award of prospective relief,
but if individual relief is sought, the plaintiff must
demonstrate that the individual employees were actual victims of
the policy.  Id.

     Although plaintiffs no longer assert class claims or seek
prospective injunctive relief, they assert that they may still

16

press a pattern or practice theory of relief.  "The Supreme Court
has never applied the Teamsters method of proof in a private,
non-class suit." Id. at 761.  "Rather, the Court has noted that
there is a 'manifest' and 'crucial' difference between an
individual's claim of discrimination and a class action alleging
a general pattern or practice of discrimination." Id. (quoting
Cooper v. Federal Reserve Bank of Richmond, 467 U.S. 867, 876
(1984).  Where the government or plaintiff class must first
litigate the common question of whether there was a
discriminatory policy, individual plaintiffs must litigate "the
discrete question of whether the employer discriminated against
that plaintiff in a specific instance." Id. (citing McDonnell
Douglas Corp. v. Green, 411 U.S. 792, 802 (1973)).

Pattern or practice class-action suits also differ from
individual, private discrimination suits because of the "nature
of remedies." Id.  Pattern or practice class-action suits
typically seek to cure systemic discrimination and the harm
suffered by the group subjected to that discrimination. Id.
Therefore, plaintiffs typically seek injunctions for broad
relief, and the "need for such remedies can be determined without
referring to matters such as the qualifications of a particular
employee." Id.  Conversely, in an individual discrimination
case, the plaintiff generally seeks damages specific to the
individualized harm inflicted upon him, such as reinstatement,
hiring, back-pay, or damages. Id.  "Such remedies typically
require the examination of the circumstances surrounding a single
employment action involving the plaintiff." Id.
/////

1   Because a pattern or practice theory of recovery is focused

2   on establishing a policy of discrimination and not on individual

3   decisions affecting specific plaintiffs, "it is inappropriate as

4   a vehicle for proving discrimination in an individual case."

5   Bacon, 370 F.3d at 575; see Celestine, 266 F.3d at 356 (holding

6   that the pattern and practice method of proof was inapplicable to

7   an individual claim of discrimination "given the nature and

8   purpose of the pattern and practice method of proof").

9   Therefore, the court holds that the pattern or practice method of

10  proof set forth in Teamsters and excluded from the Court's

11  analysis in Morgan is not available to individual plaintiffs.  As

12  such, plaintiffs' claims based upon unequal treatment that stem

13  from discrete acts by defendant UCD are not exempt from the

14  timely filing analysis set forth in Morgan and Ledbetter.

15              **3.  Applicable Statute of Limitations**

16      Defendant UCD moves for judgement on the pleadings as to

17  plaintiffs' Title IX unequal treatment claims on the basis that

18  they are barred by the statute of limitations.  Title IX, 20

19  U.S.C. § 1681 et seq., does not specify a limitations period.

20  When Congress fails to specify a statute of limitations for a

21  federal claim for relief, courts must apply the most closely

22  analogous statute of limitations under state law.  Reed v. United

23  Transp. Union, 488 U.S. 319, 323 (1989).  The Ninth Circuit has

24  not considered the issue under Title IX; however, the other

25  federal appellate courts that have considered the issue are in

26  accord that a Title IX claim is most closely analogous to a

27  common law action for personal injury.  Doe v. Howe Military

28  School, 227 F.3d 981, 987 (7th Cir. 2000); M.H.D. v. Westminster

1  Schools, 172 F.3d 797, 803 (11th Cir. 1999); Lillard v. Shelby
2  County Bd. of Educ., 76 F.3d 716, 729 (6th Cir. 1996); Egerdahl
3  v. Hibbing Community College, 72 F.3d 615, 618 (8th Cir. 1995);
4  Bougher v. University of Pittsburgh, 882 F.2d 74, 77-78 (3d Cir.
5  1989).  Moreover, in Taylor v. Regents of the University of
6  California, 993 F.2d 710, 712 (9th Cir. 1993), the Ninth Circuit
7  came to the same conclusion with respect to a Title VI claim.  In
8  light of this authority, and the fact that Title IX is to be
9  construed consistently with Title VI,[6] the court applies
10 California's statute of limitations for personal injury actions
11 to plaintiffs' Title IX claims.[7]

12      In California, an aggrieved party must commence an action
13 for personal injury caused by an alleged wrongful act or neglect
14 within two years of the act.  Cal. Code Civ. Proc. § 335.1.  The
15 two-year limitations period is a fairly recent development.
16 Before 2003, the limitations period for personal injury claims
17 was one year.  Cal. Code Civ. Proc. § 340(3), repealed.  Section
18 335.1 became effective January 1, 2003.  This amendment impacts
19 this case, which was filed December 18, 2003.

20

21      [6]   Since Title IX has identical statutory language to
   Title VI, except for the substitution of the word "sex" in Title
22 IX to replace the words "race, color, or national origin" in
   Title VI, the Supreme Court has interpreted both statutes
23 interchangeably.  Cannon v. University of Chicago, 441 U.S. 677,
   694-99 (1979).
24

25      [7]   Plaintiffs' argument to the contrary, based on one
   Northern District of California decision, is unavailing.  Kramer
26 v. Regents of the University of California, 81 F. Supp. 2d 972
   (N.D. Cal. 1999) (applying California's three-year statute of
27 limitations for actions "upon a liability created by statute" to
   ADA and Rehabilitation Act claims).  In the Title IX context, it
28 is contrary to the weight of the authority described above, most
   particularly Taylor.

1    A legislative extension of the statute of limitations period

2    will extend the limitations period of an actionable claim if the

3    extension occurs *before* the claim for relief becomes time barred

4    under the old limitations period.  Douglas Aircraft Co. v.

5    Cranston, 58 Cal. 2d 462, 465 (1962).  On the other hand, once a

6    claim is time barred it will not be revived by the extension to

7    the applicable limitations period unless the legislature

8    expressly declared that the amendment of the limitations period

9    applied retroactively.  Bartman v. Estate of Bartman, 83 Cal.

10   App. 3d 780, 787-78 (1978).  Such an expression of retroactivity

11   was made here only for victims of the terrorist attacks of

12   September 11.  Cal. Code Civ. Proc. § 340.10(b).

13   Plaintiffs' first claim for relief alleges that defendant

14   UCD violated Title IX by failing to provide equal athletic

15   opportunities.  Specifically, plaintiffs allege that defendant

16   (1) chooses "to make fewer athletic participation opportunities

17   to female students than to male students;" and (2) intentionally

18   discriminates against female students by only providing male

19   students with the opportunity to wrestle and by issuing the No

20   Females Directive.  (Compl. ¶¶ 129-30).  Viewing the complaint in

21   the light most favorable to plaintiffs, their first claim for

22   relief alleges both (1) an ineffective accommodation theory; and

23   (2) an unequal treatment theory under Title IX.  As set forth

24   above, plaintiffs' unequal treatment claims stem from discrete

25   discriminatory acts by defendant.  The last discrete

26   discriminatory act alleged by plaintiffs occurred, at the latest,

27   /////

28   /////

20

in October 2001, when their OCR complaint was resolved.[8]  The

statute of limitations then in effect was one year, and thus,

plaintiffs' claims were required to be filed no later than the

Fall of 2002.  Therefore, plaintiffs' first claim for relief for

unequal treatment is barred by the statute of limitations, and

defendant UCD's motion with respect to this claim is GRANTED.[9]

Plaintiffs' second claim for relief alleges that defendant

UCD violated Title IX by failing to provide equal athletic

financial assistance by offering athletic scholarship funding to

male students and by intentionally discriminating against female

students by choosing to make less athletic financial assistance

available.  In order to allege a claim under Title IX with

respect to scholarships, the plaintiff must be a member of a

varsity team.  See Pederson, 213 F.3d at 872 (finding that

"[s]tanding to challenge effective accommodation does not

automatically translate into standing to challenge the treatment

of existing varsity athletes" with respect to claims for unequal

treatment in scholarship opportunities).  At the latest,

plaintiffs were members of the varsity team in the Fall of 2001.

The statute of limitations then in effect was one year, and thus,

plaintiffs' claims were required to be filed no later than the

Fall of 2002.  Therefore, plaintiffs' second claim for relief for

---

[8]     Here, the existence of plaintiffs' OCR complaints may
be judicially noticed by this court.  See e.g., Pavone v.
Citicorp Credit Services, 60 F. Supp. 2d 1040, 1045 (S.D. Cal.
1997).  The truth of the allegations contained therein, however,
is not subject to judicial notice.  See Southern Cross Overseas
Agencies, Inc. v. Wah Kwong Shipping Group Ltd., 181 F.3d 410,
427 (3d Cir. 1999).

[9]     The court addresses the viability of plaintiffs'
ineffective accommodation claims, infra.

1   unequal treatment is barred by the statute of limitations, and

2   defendant UCD's motion with respect to this claim is GRANTED.

3        Plaintiffs' third claim for relief alleges that defendant

4   UCD retaliated against plaintiffs.  Specifically, plaintiffs

5   allege four "retaliatory" acts, the last of which occurred in the

6   Fall of 2001: (1) defendant instituted the No Females Directive

7   in the Fall of 2000; (2) defendant reneged on the promise to

8   remedy the No Females Directive in the Fall of 2001; (3)

9   defendant did not renew Michael Burch's contract in mid-2001; and

10  (4) defendant allowed the female wrestlers a chance to wrestle

11  against the male wrestlers for a position on the men's wrestling

12  team in the Fall of 2001.[10]  Again, the statute of limitations

13  then in effect was one year, and thus, plaintiffs' claims were

14  required to be filed no later than the Fall of 2002.  Therefore,

15  plaintiffs' third claim for relief for retaliation is barred by

16  the statute of limitations, and defendant UCD's motion with

17  respect to this claim is GRANTED.[11]

18

19       [10]   Again, plaintiffs allege that this retaliation resulted
     in a policy of discrimination.  (Compl. ¶ 150).  As set forth

20   above, however, the heart of plaintiffs' complaint relates to
     these discrete acts against the individual plaintiffs.  (Compl.

21   ¶¶ 151-57).  Plaintiffs have cited no authority for the
     proposition that an ineffective accommodation claim can be raised

22   through a retaliation claim.

23       [11]   Plaintiffs argue that this court should follow the
     rationale in its prior Memorandum and Order, filed May 6, 2004,

24   which found that plaintiffs' claims, as alleged, were timely and
     which directed the parties to further brief the statute of

25   limitations issues on a motion for summary judgment.  Since that
     order, there have been substantial changes in this litigation,

26   namely the dismissal of class allegations.  Moreover, the
     parties' arguments and submissions have further clarified the

27   legal theories advanced by plaintiffs.  The court's prior order
     reflected its analysis of plaintiffs' ineffective accommodation

28   claim, as set forth infra.  The court did not specifically
                                              (continued...)

B.    **Ineffective Accommodation**

In their first claim for relief, plaintiffs allege that defendant UCD violated Title IX by "choosing to make fewer athletic participation opportunities to female students than to male students." (Compl. ¶ 129).  The court construes that by this allegation, plaintiffs are alleging an ineffective accommodation claim.  Defendant argues that plaintiffs' ineffective accommodation claim should be dismissed because plaintiffs (1) alleged insufficient facts to support standing for an ineffective accommodation claim; (2) failed to give s notice of their claims; and (3) cannot assert a claim for damages based specifically upon the lack of opportunity to wrestle.[12]

1.    **Standing**

Defendant UCD contends that plaintiffs have not alleged sufficient facts to set forth an ineffective accommodation claim. Specifically, defendant contends that (1) plaintiffs failed to allege that there was sufficient interest and ability among females at UCD to field a women's wrestling team; (2) plaintiffs have failed to allege that there was a reasonable expectation of intercollegiate competition in women's wrestling; and (3) plaintiffs were allowed to try out for the wrestling team on an equal basis with male students.

/////

[11](...continued)
address plaintiffs' unequal treatment claims.  However, to the extent that this order is inconsistent with the court's Memorandum and Order, filed May 6, 2004, the court reconsiders that Order.  Fed. R. Civ. Proc. 54(b).

[12]    Defendant does not argue that plaintiffs' ineffective accommodation claims are barred by the statute of limitations.

1    The allegations in the complaint adequately demonstrate that
2    there was sufficient interest and ability among females at UCD to
3    field a team.  The complaint contains allegations that in the
4    early 1990s UCD began providing wrestling opportunities to female
5    students, including a women's division in the university's annual
6    "Aggie Open" wrestling tournament.  Some of UCD's female
7    wrestlers went on to national and international acclaim after
8    having trained at and received the benefits of wrestling at UCD.
9    Plaintiffs chose to attend UCD because of that history and
10   because of the promise of opportunities to participate in
11   wrestling at UCD.  Mansourian, Chiang, and Ng filled out the NCAA
12   and UCD paperwork necessary for intercollegiate athletics,
13   completed the weight certification requirements for
14   intercollegiate wrestling, and participated in UCD's wrestling
15   program for about 2 years.  Mancuso similarly fulfilled the NCAA
16   and UCD requirements and attended UCD in order to wrestle.
17   Plaintiffs also allege that there are nearly 1,000 female
18   students who participate in wrestling at California high schools,
19   and there are other female students who participate in wrestling
20   at California community colleges.  As such, viewing the
21   allegations in the light most favorable to plaintiffs and drawing
22   all reasonable inferences therefrom, plaintiffs allege that they
23   were able and ready to wrestle at UCD and that sufficient
24   interest existed in the female student population at UCD to field
25   a women's wrestling team.

26   With respect to defendant's assertion that plaintiffs have
27   failed to allege with particularity that there is a reasonable
28   expectation of intercollegiate competition, defendant asks this

court to impose too heavy a burden on plaintiffs at this stage in the litigation.  On a motion challenging the sufficiency of the pleadings, plaintiffs are not required to plead specific facts establishing a prima facie case of ineffective accommodation.  Swierkiewicz, 534 U.S. at 510-11.  Rather, all that is required is a plain statement of the facts sufficient to give the defendant notice of the claims against it.  Id. at 514.  In Swierkiewicz, the Court of Appeals had affirmed the district court's dismissal of a case brought by an employee against his former employer under Title VII and the ADEA because the plaintiff failed to allege the elements of a prima facie case of discrimination in his complaint.  Id. at 509-10.  The Supreme Court reversed the dismissal, holding that pursuant to Federal Rule of Civil Procedure 8(a), a complaint requires only a "short and plain statement of the claim showing that the pleader is entitled to relief" in order to survive a motion to dismiss.  Id. at 510-11.  The Court rejected applying a heightened pleading standard to discrimination claims.  Id. at 511.  Even if plaintiffs have not specifically alleged a reasonable expectation of intercollegiate competition, plaintiffs have complied with Rule 8(a) and given sufficient notice to defendant of the basis for their claims.  Therefore, defendant's motion to dismiss on this basis is without merit.

Finally, defendant contends that plaintiffs do not have standing to bring an ineffective accommodation claim because they allege that they were able to compete with men on an equal basis for a position on the wrestling team.  However, the crux of plaintiffs' claim is that this accommodation was not effective

25

because they were forced to compete in a contact sport against men using men's rules.  At this stage in the litigation, viewing the allegations in the light most favorable to the plaintiffs, the court cannot find as a matter of law that defendant's proffered opportunity constituted an effective accommodation.

Therefore, defendant's motion for judgment on the pleadings with respect to plaintiffs' ineffective accommodation claim on the grounds that plaintiffs lack standing to sue is DENIED.

## 2.  Notice

Defendant UCD asserts that plaintiffs' ineffective accommodation claim must fail because plaintiffs "have not alleged that they gave defendant notice or opportunity to remedy any purported systemic non-compliance with Title IX." (Defs.' Reply to Pls.' Supp. Brief. at 5, filed August 17, 2007.) Defendant cites <u>Grandson v. Univ. of Minn.</u>, 272 F.3d 568 (8th Cir. 2001), in support of their assertion.  <u>Id.</u>  In <u>Grandson</u>, the Eighth Circuit affirmed dismissal of similar damage claims without leave to amend because the complaint made "no allegation of prior notice of their complaints to appropriate UMD officials, no allegation of deliberate indifference by such officials, and no allegation they had afforded UMD a reasonable opportunity to rectify the alleged violations."  <u>Grandson</u>, 272 F.3d at 575.

Plaintiffs allege that they filed a complaint with the OCR in the Spring of 2001.  (<u>Id</u>. at ¶ 67.)  Contrary to defendant's assertions, under the Rule 12(b)(6) standard, this allegation reasonably supports the inference that plaintiffs did provide notice to defendant of their ineffective accommodation claim. /////

1    Defendant requests that the court take judicial notice of
2    letters and reports from the OCR relating to plaintiffs'
3    complaints.  Rule 201 permits a court to take judicial notice of
4    an adjudicative fact "not subject to reasonable dispute," in that
5    the fact is either "(1) generally known within the territorial
6    jurisdiction of the trial court or (2) capable of accurate and
7    ready determination by resort to sources whose accuracy cannot
8    reasonably be questioned."  Fed. R. Evid. 201(b).  The court can
9    take judicial notice of matters of public record, such as
10   pleadings in another action and records and reports of
11   administrative bodies.  Emrich v. Touche Ross & Co., 846 F.2d
12   1190, 1198 (9th Cir. 1988).  Here, the existence of plaintiffs'
13   OCR complaints may be judicially noticed by this court.  See
14   e.g., Pavone v. Citicorp Credit Services, 60 F. Supp. 2d 1040,
15   1045 (S.D. Cal. 1997).  The truth of the allegations contained
16   therein, however, is not subject to judicial notice.  See
17   Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping
18   Group Ltd., 181 F.3d 410, 427 (3d Cir. 1999).  Because the court
19   cannot take judicial notice of the content of the OCR documents,
20   the court cannot determine whether plaintiffs provided defendant
21   with notice of their OCR complaint.  Moreover, none of the
22   proffered documents includes plaintiffs' complaint to the OCR;
23   rather, the only relevant documents contain the OCR's
24   characterizations and descriptions of plaintiffs' complaint.  The
25   accuracy of the OCR's conclusions is a factual dispute that must
26   be resolved on summary judgment or at trial.
27   /////
28   /////

27

1   Therefore, defendant's motion for judgment on the pleadings

2   on the basis that plaintiffs provided insufficient notice of

3   their ineffective accommodation claim is DENIED.[13]

### 3. Damages

5   Finally, defendant argues that plaintiffs' ineffective

6   accommodation claim must fail because the damages they seek are

7   too speculative. (Defs.' Reply at 5-7, filed August 17, 2001.)

8   Specifically, defendant argues that plaintiffs cannot assume that

9   they would have been able to wrestle at UCD if it had been in

10  compliance with Title IX.

11  This case is analogous to the Fifth Circuit's decision in

12  Pederson, 213 F.3d 858, where the court found that plaintiffs,

13  female soccer players, had standing to sue for damages under an

14  ineffective accommodation theory. In Pederson, the plaintiffs

15  alleged that Louisiana State University discriminated against

16  females by ineffectively accommodating female students in the

17  provision of teams and facilities for intercollegiate

18  competition. 213 F.3d at 863. The court held that under an

19  ineffective accommodation theory, the injuries to a plaintiff

20  "resulted from the imposed barrier – the absence of a varsity

21  team for a position on which a female student should be allowed

22  to try out." Id. at 871. Therefore, so long as a plaintiff

23  alleged that she was willing and able to compete for a position

24  on that team, the injury and resulting damages were not unduly

---

26  [13]   For the purposes of this motion and because plaintiffs
27  have made sufficient allegations with respect to defendant's
    argument, the court assumes, without deciding, that Title IX
28  requires that a plaintiff give a defendant notice and an
    opportunity to respond.

speculative such that plaintiffs' claims should be dismissed on the pleading.  Moreover, the court held that to the extent "LSU violated the individual rights of the plaintiffs by failing to accommodate effectively the interests and abilities of female students" and to the extent such violations caused actual damages, the plaintiffs were entitled to be compensated for those damages.  Id. at 875.

In this case, viewing the allegations in the light most favorable to plaintiffs and drawing all reasonable inferences therefrom, plaintiffs allege that they suffered actual damages because of the absence of a varsity team, specifically a wrestling team, for a position on which a female student should be allowed to compete.  Therefore, based upon the rationale of the Fifth Circuit in Pederson, plaintiffs' claim for damages are not unduly speculative.

Defendant relies primarily on National Wrestling Coaches Association v. Department of Education, 366 F.3d 930 (D.C. Cir. 2004), in support of its assertion that plaintiffs' claim must fail because damages are too speculative.  However, the facts in National Wrestling Coaches are distinguishable from the facts in this case.  In National Wrestling Coaches, the plaintiffs represented athletics organizations that supported college wrestling.  Id. at 933.  These organizations asked the court to declare Title IX's three-part test invalid because it allegedly encouraged universities to cut male wrestling programs.  Id. at 936-37. The court reasoned that "[e]ven if the court invalidated the department's three-part test, schools might nevertheless continue to eliminate or cap men's wrestling teams in order to

comply with Title IX or the 1975 regulations or for some other
unrelated reason.   Save for their speculation about 'better
odds,' appellants would be no better off than they are under the
department's current policies." Id. at 944.   Therefore, the
court found that plaintiffs lacked standing because they failed
to show that their alleged injury could be redressed by
invalidating the challenged policy.   Id.

     Conversely, in this case, plaintiffs seek monetary and
punitive damages for injury resulting from lost opportunities
while they were students at UCD.   Plaintiffs allege actual
injury, including lost educational opportunities, increased
education expenses, and emotional distress, all arising from
defendant's alleged violations of Title IX.   As such, plaintiffs
have sufficiently demonstrated that the monetary relief sought in
this case would sufficiently redress their alleged injury.
Therefore, defendant's reliance on National Wrestling Coaches is
misplaced.

     Thus, defendant's motion for judgment on the pleadings
regarding plaintiffs' ineffective accommodation claim based upon
an unduly speculative claim for damages is DENIED.

     **C.   Punitive Damages**

     Defendant UCD argues that plaintiffs' claims for punitive
damages under Title IX must be dismissed because they are not
permitted under federal law.   In discussing the available
remedies under Title IX and by comparison, Title VI, the Supreme
Court has found that "[a] funding recipient is generally on
notice that it is subject not only to those remedies explicitly
provided in the relevant legislation, but also to those remedies

30

traditionally available in suits for breach of contract." Barnes
v. Gorman, 536 U.S. 181, 187 (2002) (citing Franklin v. Gwinnett
County Pub. Sch., 503 U.S. 60, 76 (1992)).  The Court has also
noted that "punitive damages, unlike compensatory damages and
injunction, are generally not available for breach of contract."
Id. (citations omitted).  Therefore, the Court has held that
"Title VI funding recipients have not, merely by accepting funds,
implicitly consented to liability for punitive damages."  Id. at
188.  It is well established that Title IX is modeled after Title
VI and is interpreted and applied in the same manner.  See id. at
185; see also Gebser v. Lago Vista Indep. Sch. Dist., 524 U.S.
274, 286 (1998).  As such, because the Supreme Court has found
that punitive damages may not be awarded in private suits under
Title VI, it follows that they may not be awarded in private
suits under Title IX.  See id. at 185-90; see also Mercer v. Duke
Univ., 401 F.3d 199, 202 (4th Cir. 2005) (stating that punitive
damages are not available under Title IX); Frechel-Rodriguez v.
Puerto Rico Dept. of Educ., 478 F. Supp. 2d 191, 198-99 (D.P.R.
2007) (same); Hooper v. North Carolina, 379 F. Supp. 2d 804, 811
(M.D.N.C. 2005) (same); Alston v. North Carolina A & T Univ., 304
F. Supp. 2d 774, 784 (M.D.N.C. 2004) (same).  Moreover, this
conclusion is supported by the Supreme Court's "traditional
presumption against imposition of punitive damages on government
entities."  Vermont Agency of Natural Res. v. United States ex
rel. Stevens, 529 U.S. 765, 784-85 (2000); Newport v. Fact
Concerts, Inc., 453 U.S. 247, 262-63 (1981).

Plaintiffs contend that punitive damages are not unavailable
for Title IX claims as a matter of law.  However, plaintiffs

1  wholly fail to address the Supreme Court's analysis in <u>Barnes</u>.
2  The only cases cited by plaintiffs in support of their position
3  are cases that pre-date the Court's decision in <u>Barnes</u> by at
4  least five years.   Such sparse analysis is unpersuasive in light
5  of the Supreme Court's ruling in <u>Barnes</u> and the decisions of
6  subsequent courts that have addressed this issue.[14]

7       Therefore, defendant's motion for judgment on the pleadings
8  regarding plaintiffs' claims for punitive damages under Title IX
9  is GRANTED.

10       **D.   Emotional Distress Damages**

11       Defendant UCD also argues that plaintiffs' claims for
12  emotional distress damages under Title IX must be dismissed
13  because they are not permitted under federal law.   Specifically,
14  defendant contends that relief under Title IX is limited to the
15  forms of relief traditionally available in suits for breach of
16  contract and that, absent extreme circumstances, emotional
17  distress damages are not normally recoverable in contract claims.
18  However, defendant fails to cite any case law to support its
19  position that emotional distress damages are not recoverable in
20  an ineffective accommodation claim under Title IX.   Rather,
21  defendant acknowledges that the Supreme Court has implicitly
22  approved of damages claims for emotional distress in sexual
23  harassment claims brought pursuant to Title IX.   <u>Davis v. Monroe</u>

24

---

25       [14]   Plaintiffs also contend that it is improper for this
26  court to consider the viability of remedies on a motion for
    judgment on the pleadings.   This contention is without merit.
27  The treatise cited by plaintiffs in support of their argument
    does not support their assertion.   Further, partial judgment on
28  the pleadings serves to expedite the litigation and narrow the
    claims for discovery and trial.

32

County Bd. of Educ., 526 U.S. 629 (1999); Gebser, 524 U.S. 274;
Franklin, 503 U.S. 60. Defendant simply argues that those cases
are inapplicable because the alleged breach of a duty to provide
equal accommodation in athletic programs is not sufficiently
severe to justify the award of emotional damages.

At this stage in the litigation, in the absence of any
authority on point, the court cannot find as a matter of law that
plaintiffs are not entitled to emotional distress damages.
Therefore, defendant's motion for judgment on the pleadings
regarding plaintiffs' claims for emotional distress damages is
DENIED.

**II.  42 U.S.C. § 1983**

Plaintiffs bring claims under 42 U.S.C. § 1983 against the
individual defendants for monetary damages based upon alleged
violations of the Equal Protection Clause.[15] Defendants argue
that plaintiffs' § 1983 claim must be dismissed because it is
subsumed by Title IX. Alternatively, plaintiffs claim that their
section 1983 claim can coexist with their Title IX claims.

There is presently a split in circuit authority as to
whether Title IX subsumes a claim under § 1983. Compare Bruneau
v. South Kortright Cent. Sch. Dist., 163 F.3d 749, 758 (2d Cir.
1998) ("[A] § 1983 claim based on the Equal Protection Clause is
subsumed by Title IX), and Waid v. Merrill Area Pub. Sch., 91
F.3d 857, 862 (7th Cir. 1996) (holding that a plaintiff may not

---

[15] Plaintiffs brought this claim against defendant UCD for
injunctive relief only and against the individual defendants for
all available remedies. Because plaintiffs conceded that they
are no longer seeking injunctive relief, plaintiffs' § 1983
claims against defendant UCD are DISMISSED.

1   claim that a single set of facts leads to causes of action under

2   both Title IX and section 1983), and Pfeiffer v. Marion Ctr. Area

3   Sch. Dist., 917 F.2d 779, 789 (3d Cir. 1990) (same), and Travis

4   v. Folsom Cordova Unified Sch. Dist., 2007 U.S. Dist. LEXIS 11566

5   (E.D. Cal. 2007) (holding that "Title VI is sufficiently

6   comprehensive to evince congressional intent to foreclose a §

7   1983 remedy"), with Crawford v. Davis, 109 F.3d 1281, 1284 (8th

8   Cir. 1987) (holding that Title IX has no preemptive power over

9   section 1983 claims), and Seamons v. Snow, 84 F.3d 1226, 1233

10  (10th Cir. 1996) (holding that plaintiff has independent rights

11  under Title IX and under § 1983), and Lillard v. Shelby County

12  Bd. of Educ., 76 F.3d 716, 722-23 (6th Cir. 1996) (holding that a

13  § 1983 claim seeks to enforce distinct and independent

14  substantive due process rights).

15      Section 1983 does not create substantive rights, but

16  provides the procedural framework for a plaintiff to bring suit

17  for violations of federal rights.  "Section 1983 supplies a cause

18  of action to a plaintiff when a person acting under the color of

19  state law deprives that plaintiff of any 'rights, privileges, or

20  immunities secured by the Constitution and laws of the United

21  States.'"  Bruneau, 163 F.3d at 756 (citing 42 U.S.C. § 1983).

22  However, § 1983 does not provide a remedy for violations of all

23  federal statutes.  "When the remedial devices provided in a

24  particular Act are sufficiently comprehensive, they may suffice

25  to demonstrate congressional intent to preclude the remedy of

26  suits under § 1983."  Middlesex County Sewerage Auth. v. Nat'l

27  Sea Clammers Ass'n, 453 U.S. 1, 20 (1981).  While the Ninth

28  Circuit has not decided the specific issue of whether § 1983

34

1   claims are subsumed by Title IX, it has recognized that federal

2   statutes may preclude a § 1983 remedy if they are sufficiently

3   comprehensive.  See, e.g., Dittman v. California, 191 F.3d 1020,

4   1028 (9th Cir. 1999); Dep't of Educ. v. Katherine D., 727 F.2d

5   809, 820 (9th Cir. 1983).   The court agrees with the reasoning

6   of the Second Circuit in Bruneau that, under the Sea Clammers

7   doctrine, Title IX's enforcement scheme is sufficiently

8   comprehensive to subsume plaintiffs' section 1983 claims and

9   demonstrate that Congress intended to preclude § 1983 claims when

10  it enacted this statute.  See Bruneau, 163 F.3d at 756-57.

11      Title IX's administrative enforcement scheme is complex and

12  designed to ensure compliance with its mandates.  Id. at 756.

13  Under the enforcement scheme, injured persons can file a

14  complaint with the Department of Education ("DOE"), see 34 C.F.R.

15  § 100.7(b) (1997), and the DOE must then investigate the

16  allegations.  Id. § 100.7(c); Bruneau, 163 F.3d at 756.  The DOE

17  may also periodically conduct its own compliance reviews without

18  a complaint.  Id. § 100.7(a); Bruneau, 163 F.3d at 756.  If the

19  DOE concludes that a complaint has merit or discovers violations

20  stemming from its own reviews, the DOE will notify the

21  institution and attempt to reconcile the situation through

22  informal means.  Id. § 100.7(d); Bruneau, 163 F.3d at 756.  If

23  the DOE is unsuccessful, it may ultimately terminate federal

24  funding to the institution after an administrative hearing.  Id.

25  § 100.8; Bruneau, 163 F.3d at 756.  As such, Title IX provides a

26  comprehensive administrative remedial scheme.

27      Further, in addition to the robust administrative remedial

28  scheme, the Supreme Court has held that Title IX provides

35

individuals with a private cause of action.   See Cannon v. Univ. of Chicago, 441 U.S. 677, 709 (1979).   "Once in court, the Title IX plaintiff has access to a full panoply of remedies including equitable relief and compensatory damages."   Bruneau, 163 F.3d at 756 (citing Franklin, 503 U.S. 60, 73-76 (1992)).   The fact that Title IX provides a private remedy in the courts provides further support for Congress' intent to subsume a section 1983 remedy with Title IX.

Therefore, given Title IX's administrative and judicial remedies, the court adopts the rationale of the Second Circuit and finds that it was Congress' intent "that a claimed violation of Title IX be pursued under Title IX and not § 1983." Bruneau, 163 F.3d at 757; see Pfeiffer, 917 F.2d at 789; Travis, 2007 U.S. Dist. LEXIS 11566 at *15-16 (holding that Title VI precludes claims brought pursuant to § 1983 arising from the same facts).

Plaintiffs contend that Title IX does not provide a remedy for constitutional rights and thus, it cannot subsume a claim for violation of their rights to equal protections.   In support of their assertion, plaintiffs cite the decisions from the Sixth, Eighth, and Tenth Circuits, which have carved out an exception to the Sea Clammers doctrine for constitutional rights.   See Crawford, 109 F.3d at 1284; Seamons, 84 F.3d at 1233; Lillard, 76 F.3d at 722-23.   Generally, these Circuits reasoned that although the claims may arise from the same factual basis, the Equal Protection clause gives rise to distinct and independent substantive due process rights separate and apart from those rights protected by Title IX.

/////

1   Plaintiffs' argument is unpersuasive.  In <u>Sea Clammers</u>, the
2   Supreme Court focused on the available remedies in deciding
3   whether a claim under § 1983 was precluded by a federal statutory
4   scheme.  453 U.S. at 13, 20.  The constitutional right exception
5   focuses on the nature of the underlying right, an inquiry not
6   focused upon by the Court in <u>Sea Clammers</u>.  Rather, in <u>Smith v.</u>
7   <u>Robinson</u>, the Supreme Court found that the Education of The
8   Handicapped Act ("EHA") provided a sufficiently comprehensive
9   enforcement scheme, such that it demonstrated Congress' intent to
10  preclude a claim under § 1983 for an alleged Equal Protection
11  Clause violation.  468 U.S. 992, 1013[16] ("We conclude, therefore,
12  that where the EHA is available to a handicapped child asserting
13  a right to a free appropriate public education, *based either on*
14  *the EHA or on the Equal Protection Clause of the Fourteenth*
15  *Amendment*, the EHA is the exclusive avenue through which the
16  child and his parents or guardian can pursue their claim.")
17  (emphasis added).  Therefore, the court finds that there is not
18  an exception to the <u>Sea Clammers</u> doctrine based upon plaintiffs'
19  assertion of a constitutional right.
20  Plaintiffs also argue that their § 1983 claim cannot be
21  subsumed by their Title IX claim because their § 1983 claim is
22  pressed against different defendants, the individual defendants,
23  not UCD.  Plaintiffs misconstrue the doctrine of preemption.  <u>See</u>
24  <u>Boulahanis v. Bd. of Regents</u>, 198 F.3d 633, 640 (7th Cir. 1999).
25
26      [16]   Congress subsequently amended the EHA to explicitly
    provide that the EHA is not the exclusive remedy.  20 U.S.C. §
27  1415(f).  However, this subsequent amendment to statute does not
    modify the analysis of the Supreme Court and its clear indication
28  that there is not a constitutional exception to the <u>Sea Clammers</u>
    doctrine.

Through the enactment of Title IX and its remedial scheme,
Congress created a regime "for the redress of sex discrimination
in athletic opportunities at federally-funded institutions." Id.
That regime need not include the ability to press claims against
both the institution and the individuals involved. Id. Rather,
"[t]he fact that individual claims are not available under Title
IX means that Congress has chosen suits against institutions as
the means of redressing such wrongs." Id. (citing Sea Clammers,
435 U.S. at 20); see also Waid v. Merrill Area Pub. Sch., 91 F.3d
857, 862 (7th Cir. 1996) ("Congress intended to place the burden
of compliance with civil rights law on educational institutions
themselves, not on the individual officials associated with those
institutions."); Travis, 2007 U.S. Dist. LEXIS 11566 at *16
("Allowing Plaintiffs to plead around the detailed statutory
scheme created by Title VI by pleading a § 1983 claim against
[the defendant] in his individual capacity would be inconsistent
with Congress' creation of restrictions on Title VI claims.").
As such, plaintiffs' argument that their § 1983 claim is not
subsumed by Title IX because it is asserted against the
individual defendants, not UCD, is without merit.

Therefore, because plaintiffs' § 1983 claim is subsumed by
Title IX, defendant's motion for judgment on the pleadings
regarding plaintiffs § 1983 claim is GRANTED.

**III. State Law Claims**

Finally, defendants argue that plaintiffs' state law claims
against them should be dismissed because they are immune from
suit.  Plaintiffs conceded at oral argument that Eleventh
Amendment immunity applies to bar their state law claims against

UCD.  The individual defendants contend that they are immune from suit based upon the discretionary immunity accorded public employees pursuant to California Government Code § 820.2.[17]

Section 820.2 provides immunity to a public employee for injuries resulting from "his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused."  Cal. Gov't Code § 820.2 (West 2007).  Generally, "a discretionary act is one which requires the exercise of judgment or choice."  Kemmerer v. County of Fresno, 200 Cal. App. 3d 1426, 1437 (1988).  However, California courts have not set forth a definitive rule which resolves every case.  Id.  Rather, the California Supreme Court has adopted an analysis that relies on the "policy considerations relevant to the purpose of granting immunity to the governmental agency whose employees act in discretionary capacities."  Id. (internal citations omitted).

> Immunity is reserved for those basic policy decisions which have been expressly committed to coordinate branches of government, and as to which judicial interference would thus be "unseemly."  Such areas of quasi-legislative policy-making are sufficiently sensitive to call for judicial abstention from interference that might even in the first instance affect the coordinate body's decision-making process.

Barner v. Leeds, 24 Cal. 4th 676, 685 (2000) (emphasis added).  "Immunity applies only to *deliberate and considered* policy decisions in which a conscious balancing of risks and advantages

---

[17]   Defendants assert numerous arguments in support of their assertion that plaintiffs' state law claims against them should be dismissed.  However, as set forth *infra*, because the court finds that discretionary immunity applies to defendants' alleged conduct, the court does not address the merits of those arguments.

took place." <u>Caldwell v. Montoya</u>, 10 Cal. 4th 972, 981 (1995)
(internal quotation omitted).  As such, the California Supreme
Court has drawn a distinction "between the 'planning' and
'operational' levels of decision-making." <u>Johnson v. State</u>, 69
Cal. 2d 782, 795 (1968).

The California Supreme Court has also noted that in order
for § 820.2 immunity to apply, a decision by the public employee
need not be "a *strictly careful, thorough, formal, or correct*
evaluation." <u>Caldwell</u>, 10 Cal. 4th at 983 ("[C]laims of improper
evaluation cannot divest a discretionary policy decision of its
immunity.").  The <u>Caldwell</u> court reasoned that "[s]uch a standard
would swallow an immunity designed to protect against claims of
carelessness, malice, bad judgment, or abuse of discretion in the
formulation of policy." <u>Id.</u> at 983-84.

A fair reading of the complaint reveals allegations that the
individual defendants made actual, conscious, and considered
collective policy decision. <u>See</u> <u>id.</u> at 984.  Plaintiffs allege
that "each of the individual defendants has authority over the
athletic programs at UC Davis and has participated in the
discriminatory actions and decisions" set forth in the complaint.
(Compl. ¶ 21).  As such, plaintiffs have alleged that the conduct
was within the scope of the individual defendants' duties.
Plaintiffs also allege that they spoke or tried to speak to
various individual defendants regarding reinstatement of women's
wrestling, but defendants either refused to change their policies
or refused to meet with them. (Compl. ¶¶ 63-64).  This
allegation reveals that the individual defendants were at least
aware and informed of plaintiffs' opposition to their decisions.

Further, plaintiffs allege that each of the individual defendants was "instrumental in the decision to eliminate wrestling participation and scholarship opportunities for female students." (Compl. ¶ 22).  As such, plaintiffs have alleged that defendants made actual, conscious decisions relating to the alleged discriminatory conduct.

Moreover, plaintiffs' allegations demonstrate that the alleged discriminatory decisions made by the individual defendants were policy decisions.  Plaintiffs allege that the No Females Directive issued by the individual defendants denied "the then-current female wrestlers and all future female wrestlers the many benefits obtained by these female alumni from participating in wrestling at UC Davis." (Compl. ¶ 88).  As such, the allegations in the complaint allege that defendants' conduct resulted in a wide-spread effect, not only to the plaintiffs, but also to all future female wrestlers.  Plaintiffs' allegations also describe the public response to the individual defendants' decisions.  The media supported plaintiffs, writing articles in newspapers and attending the 2001 Student Senate meeting. (Compl. ¶ 70).  A member of the California state assembly expressed her concerns about the individual defendants' decision to eliminate women's athletic participation opportunities and threatened to withhold state funding if the decision was not reversed. (Compl. ¶ 71).  Thus, it is clear from the face of the complaint that the elimination of a female wrestling program is a "sensitive" issue with "fundamental policy implications." Caldwell, 10 Cal. 4th at 983.

/////

1    Plaintiffs contend that the court cannot find that § 820.2
2  immunity applies to the individual defendants at the pleading
3  stage because the allegations in the complaint do not reveal the
4  process by which defendants made their decision and thus, do not
5  establish a considered decision.  However, the Supreme Court of
6  California rejected this argument in <u>Caldwell</u>. 10 Cal. 4th at
7  983.  In <u>Caldwell</u>, the court upheld defendants' demurrer based
8  upon § 820.2 immunity where board members allegedly voted to
9  replace the superintendent based upon improper motives of race
10 and age.  <u>Id.</u> at 976.  The court held that the complaint need not
11 disclose a "strictly careful, thorough, formal, or correct
12 evaluation."  <u>Id.</u> at 983.  Rather, the court found that the
13 application of § 820.2 immunity could be decided at the pleading
14 stage where "a fair reading of the complaint" demonstrate that
15 the defendant's conduct "involved an *actual* exercise of
16 discretion."  <u>Id.</u>  In this case, as set forth above, plaintiffs'
17 allegations demonstrate that the conduct by defendants
18 constituted "actual, conscious, and considered" collective policy
19 decisions.  <u>Id.</u> at 984.
20    Finally, plaintiffs assert that defendants' actions were
21 operational decisions, not policy decisions.  In support of this
22 assertion, plaintiffs argue that defendants' actions contravened
23 existing policies established under the California Education Code
24 and Title IX.  However, the policies at issue in this case are
25 not those set forth by the legislature, but rather, the policies
26 of the University, as promulgated by the individual defendants.
27 Plaintiffs' complaint alleges that defendants' actions had a
28 wide-spread effect at UCD by eliminating athletic opportunities

for women.  Such conduct is not the mere implementation of an

already established policy, but the creation of a new, allegedly

discriminatory policy.  As such, plaintiffs' assertion that

alleged conduct of defendants were operational decisions is

without merit.

Therefore, because a fair reading of plaintiffs' complaint

reveals allegations that the individual defendants made actual,

conscious, and considered collective policy decisions, the

individual defendants are entitled to immunity pursuant to 820.2.

Thus, defendants' motion for judgment on the pleadings regarding

plaintiffs' state law claims[18] is GRANTED.

## CONCLUSION

For the foregoing reasons, defendants' motion for judgment

on the pleadings is GRANTED in part and DENIED in part.

(1)   Defendant UCD's motion for judgment on the pleadings

regarding plaintiffs' first claim for relief under

Title IX based upon a theory unequal treatment is

GRANTED.

(2)   Defendant UCD's motion for judgment on the pleadings

regarding plaintiffs' first claim for relief under

Title IX based upon a theory of ineffective

accommodation is DENIED.

---

[18]   The Supreme Court has explicitly found that § 820.2 provides immunity against a public policy tort.  Caldwell, 10 Cal. 4th at 984.  Moreover, § 820.2 immunity will only fail to apply to basic policy decision where there is a "clear indication of legislative intent that statutory immunity is withheld or withdrawn" in a particular case.  The court has found nothing in the Unruh Civil Rights Act which clearly evinces such an intent. See id. at 987-88 (finding that FEHA did not carve out an exception to immunity through the phrase "[e]xcept as otherwise provided by statute").

43

(3)  Defendant UCD's motion for judgment on the pleadings regarding plaintiffs' second claim for relief under Title IX is GRANTED.

(4)  Defendant UCD's motion for judgment on the pleadings regarding plaintiffs' third claim for relief for retaliation in violation of Title IX is GRANTED.

(5)  Defendant UCD's motion for judgment on the pleadings regarding plaintiffs' claims for punitive damages under Title IX is GRANTED.

(6)  Defendant UCD's motion for judgment on the pleadings regarding plaintiffs' claims for emotional distress damages under Title IX is DENIED.

(7)  The individual defendants' motion for judgment on the pleadings regarding plaintiffs' claims brought pursuant to 42 U.S.C. § 1983 is GRANTED.

(8)  Defendants' motion for judgement on the pleadings regarding plaintiffs' state law claims is GRANTED.

IT IS SO ORDERED.

DATED: October 18, 2007

_____
FRANK C. DAMRELL, JR.
UNITED STATES DISTRICT JUDGE

44