1

2

3

4

5

6

7

8              IN THE UNITED STATES DISTRICT COURT

9            FOR THE EASTERN DISTRICT OF CALIFORNIA

10   AREZOU MANSOURIAN, LAUREN
     MANCUSO, NANCY NIEN-LI CHIANG,
11   and CHRISTINE WING-SI NG; and all
     those similarly situated,

12
                 Plaintiffs,                    No. CIV S-03-2591 FCD EFB
13
          vs.
14
     BOARD OF REGENTS OF THE             ORDER
15   UNIVERSITY OF CALIFORNIA AT
     DAVIS, et al.,
16
                 Defendants.
17   _____/

18        This case was before the undersigned on December 5, 2007, for hearing on defendant's

19   motion for a protective order.  Defendant sought an order that the deposition of Lawrence

20   Vanderhoef, Chancellor of the University of California at Davis, not be taken, and that certain

21   documents not be disclosed on the basis of the deliberative process privilege.  George Acero

22   appeared as defense counsel and Mark T. Johnson appeared as plaintiffs' counsel.  Having

23   considered all submitted papers and oral argument, and for the reasons stated at the hearing and

24   set forth below, defendant's motion is denied.

25   ////

26   ////

                                               1

1  I. <u>BACKGROUND</u>

2      This action is proceeding on the complaint filed on December 18, 2003.  Plaintiffs'

3  claims have been limited by the district judge's recent ruling on defendant's motion for judgment

4  on the pleadings.  The remaining causes of action involve plaintiffs' claims under Title IX for

5  ineffective accommodation and emotional distress.  All individual defendants have been

6  dismissed, leaving the University as the only defendant.  Plaintiffs are former female students at

7  the University of California at Davis ("UCD" or the "University") who participated in, or

8  planned to participate in, the University's intercollegiate wrestling program.  Plaintiffs' claims

9  arise from the University's limitations on wrestling opportunities for women.

10      Before Chancellor Vanderhoef was dismissed as a defendant, plaintiffs had noticed his

11  deposition for October 24, 2007.  Declaration of Mark T. Johnson ("Johnson Decl."), ¶3.  During

12  subsequent meet and confer sessions with defense counsel, plaintiffs agreed to postpone that

13  deposition until December 13, 2007 – fifteen days before the discovery deadline.  *Id.*, ¶ 3.  Then,

14  on November 7, 2007, defendant informed plaintiffs that it would not produce Mr. Vanderhoef

15  for deposition unless plaintiffs agreed to significant limitations on the scope of the examination

16  and unless plaintiffs provided it with the specific topics on which they intended to depose the

17  chancellor.  *Id.*, ¶ 4.  Dissatisfied with the specificity of plaintiffs' proposed deposition topics,

18  defendant now moves to prevent the deposition altogether, and to prevent the production of

19  several documents over which Chancellor Vanderhoef asserts the deliberative process privilege.

20      A. <u>Deposition</u>

21      Defendant argues that Chancellor Vanderhoef should not be required to submit to a

22  deposition because he is an "apex" deponent.  The "apex rule" is normally applied by courts to

23  protect heads of agencies from unnecessary and harassing depositions.  *See Kyle Eng'g Co. v.*

24  *Kleppe*, 600 F.2d 226, 231-32 (9th Cir. 1979) ("heads of agencies are not normally subject to

25  deposition").  Courts have attributed the rule's genesis to the Supreme Court's holding in *United*

26  *States v. Morgan*, 313 U.S. 409 (1941).  In *Morgan*, the High Court reversed the district court's

1    order allowing plaintiffs to depose the Secretary of Agriculture regarding the process by which

2    he reached his decision regarding rates to be charged by market agencies at stockyards.  *Morgan*,

3    313 U.S. at 422.  The Court likened the Secretary's decionmaking process to that of a judge, and

4    reasoned that scrutiny of that process would harm the integrity and independence of the

5    administrative process.  *Id.*  Courts have subsequently relied on *Morgan* to protect top executive

6    branch officials from testifying as witnesses.  *See, e.g., In re United States*, 985 F.2d 510, 512

7    (11th Cir. 1993) (ordering district court to quash subpoena for the Commissioner of the Food and

8    Drug Administration to be a witness in a criminal case); *Simplex Time Recorder Co. v. Secretary*

9    *of Labor*, 247 U.S. App. D.C. 85, 766 F.2d 575, 586 (D.C. Cir. 1985) (affirming ALJ's refusal to

10   allow top Department of Labor officials to be called as witnesses).

11    Despite the rule's genesis and traditional application in the context of protecting heads

12   of agencies from deposition, some courts have applied it to limit depositions of high-ranking

13   corporate officers.  *See, e.g.*, *Baine v. General Motors Corp.*, 141 F.R.D. 332, 334 (M.D. Ala.

14   1991); *Mulvey v. Chrysler Corp.*, 106 F.R.D. 364 (D.R.I. 1985); *Skookum Co. v. Sutherline*

15   *Machine Works, Inc.*, 33 F.R.D. 19, 20-21 (D. Or. 1963).

16    Here, defendant invokes the "apex rule" to prevent the deposition of Chancellor

17   Vanderhoef, although defendant acknowledges that no court has previously applied it in that

18   context.  Defendant argues that as president of a publicly-funded university, the chancellor is

19   like a high ranking public official.  In support of its position, defendant points to indicia of the

20   University's "public agency" nature.  For example, the Regents of the University of California is

21   a constitutionally-created public entity, *see* Cal. Const. Art IX § 9(a); Cal. Gov't Code § 811.2,

22   and the California Supreme Court has likened the University of California system to a "branch of

23   state itself" or a "statewide administrative agency."  *See Campell v. Regents of University of*

24   *Calif.*, 35 Cal.4th 311, 321 (2005).

25    Alternatively, defendant argues that the chancellor is like a high-ranking corporate

26   officer, as he is the chief campus officer and the executive head of all activities at UCD.  *See*

1   Declaration of Larry N. Vanderhoef, Defendant's Exh. I ("Vanderhoef Decl."), ¶ 1.  Despite the

2   quasi-governmental nature of the University, the court finds it more akin to a corporation than to

3   the executive branch agencies originally contemplated by the "apex rule."  However, because the

4   "apex rule" has been extended to apply to top corporate officials, Chancellor Vanderhoef could

5   reasonably be characterized as an "apex deponent" given his role as executive head of UCD.

6          Even so, the court finds that plaintiffs are entitled to depose the chancellor.  *See*

7   *Salter v. Upjohn Co.*, 593 F.2d 649, 651 (5th Cir.1979) ("It is very unusual for a court to prohibit

8   the taking of a deposition altogether and absent extraordinary circumstances, such an order

9   would likely be in error.") (citing 4 J. Moore & J. Lucas, *Moore's Federal Practice* P 26.69 (3d

10  ed. 1976)); *United States EEOC v. Caesars Entm't, Inc*, 237 F.R.D. 428, 432 (D. Nev. 2006)

11  ("As a general rule, courts will not grant protective orders that prohibit the taking of deposition

12  testimony.").

13         Defendant argues that once it is determined that an individual is an "apex" deponent, his

14  deposition may only be taken where the party seeking discovery establishes that the deponent

15  has direct, personal factual information pertaining to material issues in the action, and only when

16  the information is not otherwise available through any other source.  Joint Statement, 12:11-18

17  (citing *Avalos v. Baca*, Case No. CV 05-7602 DDP, 2006 U.S. Dist. LEXIS 79376, at \*3 (C.D.

18  Cal. Oct. 16, 2006)).[1]  This approach shifts the burden from the party seeking the protective

19  order to the deposing party, and requires the party to establish the deponent's personal

20  knowledge regarding material issues and that such information is unavailable from a "less

21  intrusive" source.  *WebSideStory, Inc. v. NetRatings, Inc.*, No. 06-cv-408 WQH (AJB), 2007

22  U.S. Dist. LEXIS 20481, at \*7 (S.D. Cal. Mar. 22, 2007).

23  ////

24

25         [1]  Notably, this case cited by defendant relies on cases that address the appropriateness of
    deposing federal agency officials, not university chancellors.  *See, e.g., Church of Scientology of*
26  *Boston v. I.R.S.*, 138 F.R.D. 9, 12 (D. Mass. 1990).

1    Although defendant urges the court to adopt this burden-shifting approach, defendant

2  points to no binding Ninth Circuit or Supreme Court precedent requiring that result.  Indeed,

3  several of the cases cited by defendant recognize that the deponent's knowledge and the

4  availability of the information from other sources are merely factors considered by courts rather

5  than firmly established prerequisites to an order compelling an apex deponent's deposition.

6  *WebSideStory*, 2007 U.S. Dist. LEXIS 20481, at *7.  Accordingly, the court relies on the

7  overarching dictates of the Federal Rules of Civil Procedure in determining whether or not a

8  protective order should issue.[2]

9    The Federal Rules allow the court to limit discovery in order to avoid cumulation,

10  duplication, harassment, expense and burdensomeness.  *See* Fed. R. Civ. P. 26(b)(1).  The court

11  has discretion to limit discovery where the discovery sought "is obtainable from some other

12  source that is more convenient, less burdensome, or less expensive."  Fed. R. Civ. P. 26(b)(1).

13  The court also has discretion to issue a protective order if the moving party shows good cause

14  therefor, such as to prevent harassment, oppression, undue burden or expense, annoyance or

15  embarrassment.  Fed. R. Civ. P. 26(c).  "A strong showing is required before a party will be

16  denied entirely the right to take a deposition."  *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429

17  (9th Cir. 1975) (district court erred in prohibiting the deposition of Herald-Examiner's publisher

18  when plaintiff suggested possible information publisher might have that others did not).

19  Defendant has not made such a showing here.

20    Plaintiffs have established that Chancellor Vanderhoef had direct, personal knowledge of

21  facts relevant to this action.  In particular, plaintiffs point to Chancellor Vanderhoef's testimony

22  before a senate committee regarding the University's Title IX compliance.  At the hearing, he

23  testified that he was very involved with UCD's athletic programs, that he frequently spoke with

24

25    [2] The court does not wholly reject the burden-shifting approach applied by some courts, and notes that it may indeed be appropriate where a party truly seeks to depose a high ranking executive official, or some other high-ranking official for no purpose other than harassment.

26  However, those are not the circumstances presented in the present motion.

1   other UCD officials and staff about Title IX, and that he is ultimately responsible for certifying

2   that the University is in compliance with Title IX.  *See* Joint Statement, 38:15-39:6 (Johnson

3   Decl., Exh. E, at 50-51).  Based on this testimony, plaintiffs wish to depose Chancellor

4   Vanderhoef regarding actions taken by him personally during the relevant time period to assure

5   UCD's compliance with Title IX, his communications with subordinate staff and other officials

6   regarding efforts to comply, and his involvement with the development and approval of actions

7   taken to effect compliance.  Joint Statement, 9:13-19.  These topics are relevant to plaintiffs'

8   claims of ineffective accommodation under Title IX, and seek information regarding Chancellor

9   Vanderhoef's personal knowledge and involvement with Title IX compliance.  Thus, even if the

10  court were to require plaintiffs to seek discovery from other "less burdensome" sources, any

11  such source would be a poor substitute for Vanderhoef's testimony regarding his own personal

12  knowledge and actions.  Moreover, there is no indication that the deposition is sought for an

13  improper purpose such as harassment or oppression.  Indeed, plaintiffs have agreed to limit the

14  deposition to three hours, less than half the length of time contemplated by the Federal Rules of

15  Civil Procedure.  *Cf. Digital Equipment Corp. v. System Industries, Inc.*, 108 F.R.D. 742, 744 (D.

16  Mass. 1986) (granting protective order as to an apex deponent where counsel stated on the record

17  that he intended to "waste" the executive's afternoon).

18          Nor has defendant shown that an examination of Vanderhoef would be overly

19  burdensome.  Defendant admits that UCD would not "grind to a halt" if Chancellor Vanderhoef

20  were subjected to the three-hour deposition – a fact that is supported by his previous agreement

21  to be deposed in 2004 in the related case of *Burch v. Board of Regents of the Univ. of Davis*,

22  Case No. 2:04-cv-0038 WBS GGH.  *See* Joint Statement, 15:27-28.  Finally, even if plaintiffs

23  were required to seek discovery from Chancellor Vanderhoef via interrogatories or other such

24  devices, the impending discovery deadline leaves plaintiffs little time to effect such alternative

25  ////

26  ////

6

1   discovery, especially if a dispute were to arise as to the sufficiency of the responses.[3]  Defendant

2   has failed to establish good cause for an order precluding the deposition of Chancellor

3   Vanderhoef and its motion is therefore denied.

4           B.   Deliberative Process Privilege

5           Defendant also moves the court for a protective order as to documents used by

6   Chancellor Vanderhoef and various university personnel to prepare for testimony before a

7   committee of the California legislature in August 2007 regarding the University of California's

8   Title IX compliance.  The hearing was titled "Gender Discrimination and the Status of Title IX

9   Implementation at the University of California" and concerned, among other things, Title IX

10  lawsuits, including this one, filed against UCD.  Vanderhoef Decl., ¶ 3.  Defendant claims the

11  draft documents circulated between Chancellor Vanderhoef and other UCD officials are

12  protected from disclosure under the deliberative process privilege.

13           "Federal law recognizes a privilege for pre-decisional, non-factual, non-public

14  communications occurring within federal agencies."  *United States v. Irvin*, 127 F.R.D. 169, 172

15  (D. Cal. 1989).  This deliberative process privilege protects confidential exchanges of opinions

16  and advice within the executive branch of government.  *See Newport Pac., Inc. v. County of San*

17  *Diego*, 200 F.R.D. 628, 636 (S.D. Cal. 2001).  The "purpose of the deliberative process privilege

18  is to prevent injury to the quality of agency decisions by ensuring that the frank discussion of

19  legal or policy matters in writing, within the agency, is not inhibited by public disclosure."

20  *Maricopa Audubon Soc'y v. U.S. Forest Service*, 108 F.3d 1089, 1092 (9th Cir. 1997) (quoting

21  *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 148 (1975)) (internal quotations omitted).

22  ////

23  ////

24

25      [3] As noted, at defendant's request the deposition was postponed to a date that left only
    fifteen days before the discovery cutoff date.  Then, less than 30 days before the new deposition
    date, defendant informed plaintiffs that it would not produce Mr. Vanderhoef for deposition.
26  Johnson Decl. ¶3.

1    Defendant admits that there are no cases expanding this privilege to documents used for

2  decisions made by university officials.[4]  However, defendant points to cases where courts have

3  recognized the privilege for state and local agencies, and argues that it should also be extended

4  to a public university.  *See, e.g.,United States v. Irvin*, 127 F.R.D. 169, 172-74 (C.D. Cal. 1989)

5  (recognizing privilege for the County of Los Angeles but concluding it was trumped by the need

6  for disclosure); *North Pacifica, LLC v. City of Pacifica*, 274 F. Supp. 2d 1118, 1125 (N.D. Cal.

7  2003) (applying privilege to local legislators but only as to their "subjective uncommunicated

8  thoughts"); *but see Corporacion Insular de Seguros v. Garcia*, 709 F. Supp. 288, 298 (D.P.R.

9  1989) (refusing to hold that a deliberative process privilege protects state legislators).

10    Even assuming the deliberative process privilege extends to defendant, it has failed to

11  establish its applicability to the documents at issue here.  To fall within the deliberative process

12  privilege, "the materials in question must be predecisional in nature and must also form part of

13  the agency's deliberative process."  *Maricopa*, 108 F.3d at 1092 (citing *Sears, Roebuck & Co.*,

14  421 U.S. at 151-52).  "These twin requirements recognize that the underlying purpose of this

15  privilege is to protect the consultative functions of government by maintaining the

16  confidentiality of advisory opinions, recommendations, and deliberations comprising part of a

17  process by which governmental decisions and policies are formulated."  *Nat'l Wildlife Fed'n v.*

18  *U.S. Forest Service*, 861 F.2d 1114, 1117 (9th Cir. 1988) (internal quotations and citations

19  omitted) (citing *Jordan v. U.S. Dept. of Justice*, 192 U.S. App. D.C. 144, 591 F.2d 753, 774

20  (D.C. Cir. 1978)).  The Court in *Maricopa* defined a "predecisional" document as

21       one prepared in order to assist an agency decisionmaker in arriving at his decision, and
         may include recommendations, draft documents, proposals, suggestions, and other
22

23       [4] In the only case touching on this issue, the court merely assumed without deciding that
   a public university official was allowed to rely on the privilege, and ultimately ordered
24   production. *Qamhiyah v. Iowa State Univ. of Sci. & Tech.*, 245 F.R.D. 393 (D. Iowa 2007)
   (finding the privilege did not protect the documents at issue because plaintiff's cause of action
25   put into issue the university's intent in deciding to deny plaintiff tenure, and on balance, the
   university's  interest in non-disclosure did not weigh very heavily in an employment
26   discrimination case).

8

1   subjective documents which reflect the personal opinions of the writer rather than the
2   policy of the agency.  A predecisional document is part of the "deliberative process," if
    the disclosure of the materials would expose an agency's decisionmaking process in such
3   a way as to discourage candid discussion within the agency and thereby undermine the
    agency's ability to perform its functions.

4   *Maricopa*, 108 F.3d at 1093 (quoting *Assembly of the State of Cal. v. U.S. Dep't of Commerce*,

5   968 F.2d 916, 920 (9th Cir. 1992)) (internal quotations omitted).  The Court further held that the

6   agency must identify a specific decision to which the document is predecisional.  *Id.*, at 1094.

7          Although defendant characterizes the documents at issue in this case as "predecisional"

8   to UCD's decision as to how the officials would testify before the legislature, this is not the kind

9   of decision contemplated by the privilege.  Rather, the documents were used to prepare for a post

10  hoc explanation of past actions.  Unlike the documents at issue in *Maricopa*, these documents

11  were used solely to prepare for legislative testimony concerning past actions and decisions that

12  were the subject of pending lawsuits.  In *Maricopa*, the documents at issue were an internal

13  investigative report and a letter written by the regional forester of the Southwestern Region of

14  the Forest Service.  Although both the letter and the report were generated in response to

15  allegations of mismanagement and wrongdoing in the Southwestern Region of the Forest

16  Service, the Chief of the Forest Service successfully asserted the privilege over those documents

17  because he used them to determine whether action, such as important personnel changes, needed

18  to be taken in that region.  *Maricopa*, 108 F.3d at 1094.

19         Here, by contrast, defendant has not shown that the documents were used by Chancellor

20  Vanderhoef to determine whether executive action, such as personnel or policy changes, were

21  required in the face of allegations of discrimination.  Rather, Chancellor Vanderhoef states in his

22  declaration that the "documents were not generated, prepared or collected for purposes of

23  making any decision concerning the administration of the Athletic Department and *were solely*

24  *generated, prepared or collected for purposes of the Senate hearing*."  Vanderhoef Decl., ¶ 4

25  (emphasis added).  He further declares that the Senate hearing on Title IX required him and other

26  officials to "respond to accusations that the University had discriminated against certain former

1  women wrestlers and claims that U.C. Davis' Athletic Department was not in compliance with

2  Title IX." *Id.*, ¶¶ 3, 4.

3      These averments make clear that the documents were generated not for the purpose of

4  making any policy, management or personnel decisions, but were instead aimed at responding to

5  allegations concerning the University's past actions with regard to Title IX compliance and the

6  wrestling program.  The university officials did not convene to decide whether major reforms of

7  the athletic program needed to be made, or to make personnel changes, or to determine, if

8  indeed, there were problems with the University's Title IX compliance.  Instead, they convened

9  to determine how they would present their side of these already existing issues in their testimony

10 to the legislature.  As such, the documents generated pursuant to those discussions were not

11 "predecisional."  It is simply inappropriate to apply the privilege where "defendants were

12 seeking to protect after-the-fact recollections and/or justifications." *Newport Pac.*, 200 F.R.D. at

13 637 (citing *Artfield Builders Inc v. Village of Buffalo Grove*, 1992 U.S. Dist. LEXIS 16328, 1992

14 WL 314185, *1 (N.D. Ill. 1992)).

15     Moreover, the documents are not "deliberative."  The determination of whether a

16 document is "deliberative" for purposes of the privilege focuses on "the effect of the materials'

17 release – namely, whether disclosure of the materials would expose an agency's decision-making

18 process in such a way as to discourage candid discussion within the agency and thereby

19 undermine the agency's ability to perform its functions." *Id.*, at 1094-95 (quoting *Assembly of*

20 *the State of Cal.*, 968 F.2d at 921).

21     Here, even assuming UCD is the kind of agency entitled to invoke the privilege, the court

22 is not convinced that release of the pre-testimony documents would undermine the University's

23 "ability to perform its functions." *Id.*, at 1094-95; *see Scharf v. Regents of Univ. of Cal.*, 234

24 Cal. App. 3d 1393, 1405 (Cal. Ct. App. 1991) (noting that unlike the central functions of the

25 legislative, executive and judicial branches of state government, one central function of the

26 University of California is administration of the academic aspects of the university).  Defendant

10

1  has not presented convincing evidence that release of the contested documents would impede the

2  University's administration of its academic and other programs.

3      Finally, the court notes that like all privileges, the deliberative process privilege is to be

4  narrowly construed. *See Eureka Fin. Corp. v. Hartford Accident and Indem. Co.*, 136 F.R.D.

5  179, 183 (E.D. Cal. 1991).  The court declines to expand that privilege to the facts presented by

6  defendant's motion.  The documents at issue were used by university officials to prepare for

7  testimony before the legislature regarding actions and decisions that occurred several years prior

8  to the hearing itself.  This scenario is a far cry from the traditional context of a federal agency's

9  invocation of the privilege to protect documents used in the process of promulgating a rule,

10 deciding an administrative appeal, or determining and establishing public policy.  For the

11 foregoing reasons, defendant's motion for a protective order as to the documents withheld on the

12 basis of the deliberative process privilege is denied.

13 III.  CONCLUSION

14     In accordance with the foregoing, IT IS ORDERED that defendant's motion for a

15 protective order is denied.  Chancellor Vanderhoef shall appear for deposition, and defendant

16 shall produce the documents previously withheld on the basis of the deliberative process

17 privilege.

18 DATED:  December 21, 2007.

19                                 EDMUND F. BRENNAN
20                                 UNITED STATES MAGISTRATE JUDGE

21

22

23

24

25

26