PORTER | SCOTT
A PROFESSIONAL CORPORATION
Nancy J. Sheehan, SBN 109419
George A. Acero, SBN 226709
350 University Avenue, Suite 200
Sacramento, California 95825
(916) 929-1481
(916) 927-3706 (facsimile)

**Attorneys for Defendants:** REGENTS OF THE UNIVERSITY OF CALIFORNIA, LARRY VANDERHOEF (erroneously sued as LAWRENCE VANDERHOEF), GREG WARZECKA, PAM GILL-FISHER, ROBERT FRANKS and LAWRENCE SWANSON

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

AREZOU MANSOURIAN, LAUREN MANCUSO, NANCY NIEN-LI CHIANG, and CHRISTINE WING-SI NG; and all those similarly situated,

Plaintiffs,

vs.

REGENTS OF THE UNIVERSITY OF CALIFORNIA, et al.,

Defendants.

CASE NO. 2:03-CV-02591-FCD-EFB

**EXHIBITS A – H IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**Date: March 28, 2008**
**Time: 10:00 a.m.**
**Courtroom: 2**

# EXHIBIT A

PORTER | SCOTT
A PROFESSIONAL CORPORATION
Nancy J. Sheehan, SBN 109419
George A. Acero, SBN 226709
350 University Avenue, Suite 200
Sacramento, California 95825
(916) 929-1481
(916) 927-3706 (facsimile)

**Attorneys for Defendants:** REGENTS OF THE UNIVERSITY OF CALIFORNIA, LARRY VANDERHOEF (erroneously sued as LAWRENCE VANDERHOEF), GREG WARZECKA, PAM GILL-FISHER, ROBERT FRANKS and LAWRENCE SWANSON

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

AREZOU MANSOURIAN, LAUREN MANCUSO, NANCY NIEN-LI CHIANG, and CHRISTINE WING-SI NG; and all those similarly situated,

Plaintiffs,

vs.

REGENTS OF THE UNIVERSITY OF CALIFORNIA, et al.,

Defendants.

CASE NO. 2:03-CV-02591-FCD-EFB

**DECLARATION OF WENDY WALTERS IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**Date: March 28, 2008**
**Time: 10:00 a.m.**
**Courtroom: 2**

I, Wendy Walters, declare the following:

1. I am employed by the National Collegiate Athletic Association (NCAA) as the Director of Membership Services and have held that position since September, 2004. I am involved in interpretation of NCAA legislation and personnel management, and serve as the liaison to the NCAA general counsel's office, and the NCAA Divisions I, II and III Infractions Appeals Committees. I also handle other projects as assigned by the Senior V.P. of the NCAA. Prior to early 2007, I was

responsible for oversight of the emerging sports for women program. I first started working with the NCAA in 1999. I have also held the position of Assistant Director with the NCAA.

2. The NCAA administers 88 championships in 23 sports for its member institutions. There are championships for men's teams in baseball, basketball, cross country, fencing, football, golf, gymnastics, ice hockey, lacrosse, rifle, skiing, soccer, swimming, tennis, indoor track, outdoor track, volleyball, water polo and wrestling. There are championships for women's teams in basketball, bowling, cross country, fencing, field hockey, golf, gymnastics, ice hockey, lacrosse, rifle, rowing, skiing, soccer, softball, swimming, tennis, indoor track, outdoor track, volleyball and water polo. Championships are also held for the mixed gender sports of fencing and rifle.

3. Although a men's wrestling team may have women wrestlers on it, the NCAA does not sponsor women's wrestling as a sport.

4. The NCAA has identified certain sports for women as "emerging sports". In my role as Director of Membership Services, until earlier this year I oversaw the process by which sports are added to and deleted from the emerging sports list and am the primary source of historical knowledge on this topic. Neither the process for determining emerging sports nor the criteria for establishing emerging sports has changed after I ceased to oversee this issue. The development of a list of emerging sports for women was one of several recommendations made by the NCAA Gender Equity Task Force in order to increase the participation opportunities for women athletes at the collegiate level. In 1997, the NCAA's Committee on Women's Athletics submitted a list of guidelines for identifying emerging sports for women at the collegiate level. Over the years, the criteria for consideration as an emerging sport have evolved. Currently, in order to be considered for inclusion on the list of emerging sports, a sport must meet the following criteria:

(a) The activity must meet the definition of a sport, which means an institutional activity involving physical exertion with the purpose of competition versus other teams or individuals within a collegiate competition structure. There must be regularly scheduled individual or team head-to-head competition (at least five) within a defined competitive season and standardized rules ratified by official regulatory agencies and governing bodies;

(b) There must be twenty (20) or more varsity teams and/or competitive club teams that currently exist on college campuses for the sport;

(c) Data must exist that demonstrates support for the sport such as collegiate or intramural sponsorship, high school sponsorship, non-scholastic competitive programs, and associational and organizational support;

(d) A demonstrated understanding that if the sport is identified as an emerging sport, all N.C.A.A. member institutions wishing to sponsor the sport will abide by N.C.A.A. rules and regulations; (e) A proposal must be submitted to the N.C.A.A. outlining suggestions for championship rules and a format for the sport; and

(f) Ten (10) letters of support must be submitted by the president or athletic directors from member institutions confirming they will sponsor the sport as an emerging sport. The letters must be dated within one year of the submission of the proposal requesting identification as emerging sport.

The sports that are currently identified as emerging sports for women are archery, badminton, equestrian (Division I and II only), rugby, squash, synchronized swimming and team handball. Women's wrestling has never been included on the list of emerging sports.

5. Within approximately the past five years, the NCAA has received inquiries from Gary Abbott, the Director of Special Projects and Communications for USA Wrestling, regarding women's collegiate wrestling. The focus of these communications was the criteria for adding a sport to the NCAA's list of emerging sports for women. Neither Mr. Abbott nor any other proponent has submitted documentation showing that women's collegiate wrestling meets the criteria for an emerging sport.

I make this declaration of my own personal knowledge and, if called upon to do so, I could and would competently testify about the matters discussed herein.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed this 20 day of December 2007, at Indianapolis, Indiana.

Wendy Walters

# EXHIBIT B

PORTER | SCOTT
A PROFESSIONAL CORPORATION
Nancy J. Sheehan, SBN 109419
George A. Acero, SBN 226709
350 University Avenue, Suite 200
Sacramento, California 95825
(916) 929-1481
(916) 927-3706 (facsimile)

**Attorneys for Defendants:** REGENTS OF THE UNIVERSITY OF CALIFORNIA, LARRY VANDERHOEF (erroneously sued as LAWRENCE VANDERHOEF), GREG WARZECKA, PAM GILL-FISHER, ROBERT FRANKS and LAWRENCE SWANSON

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| AREZOU MANSOURIAN, LAUREN MANCUSO, NANCY NIEN-LI CHIANG, and CHRISTINE WING-SI NG; and all those similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>REGENTS OF THE UNIVERSITY OF CALIFORNIA, et al.,<br><br>Defendants. | CASE NO. 2:03-CV-02591-FCD-EFB<br><br>**DECLARATION OF TODD PETR IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>**Date: March 28, 2008**<br>**Time: 10:00 a.m.**<br>**Courtroom: 2** |

I, Todd Petr, declare the following:

1. I am currently employed with the National Collegiate Athletic Association ("NCAA") as the Managing Director of Research. I have been the Managing Director of Research at the NCAA since 2003. The purpose of the NCAA's Research Department is to gather and analyze data about college sports generally, including information about student-athletes, the NCAA's member institutions (colleges and universities located within the United States), and the effect of NCAA policies, to provide member institutions, and the general public, a better understanding of intercollegiate athletics and to

assist the NCAA in providing more effective governance over intercollegiate athletics. In my capacity as the Managing Director of Research, I oversee most NCAA research projects and supervise all of the NCAA's research staff. I have been a member of the NCAA's Research staff since 1987 when I was hired as Assistant Director of Research. I earned an undergraduate degree in psychology from Washington University and a Master's in Business Administration from the University of Kansas.

2. Among other information, NCAA's research office collects data from member institutions about the participation rates in those sports in which the NCAA sponsors a championship as well as those sports it identifies as "emerging sports." As a regular practice, the NCAA's member institutions provide, on a yearly basis, demographic information about their student-athletes, including, a breakdown by ethnicity and gender of their student-athletes participation rates by sports teams (for the teams which participate in NCAA sponsored sports or sports identified as emerging sports). The NCAA gathers and maintains such data in the ordinary course and scope of its business of overseeing intercollegiate athletics.

3. In 2007 the NCAA published a report on the participation rates of its member institutions covering the 1981-1982 academic year to the 2005-2006 academic year. The NCAA has published yearly participation reports for over a decade. I have overseen, at a supervisory level, the preparation of these yearly reports since I became Managing Director of Research, and oversaw the preparation of the 2007 report. The report was prepared by my staff, in part, by using information included in previous reports with updated data accumulated after the publication of the previous report being added. Attached to the Appendix of Exhibits, marked as Exhibit AAAA, is a true and correct copy of the report titled "*1981-82—2005-06 NCAA Sports Sponsorship and Participation Rates Report*." I maintain a copy of this report in the ordinary course and scope of business as the Managing Director of Research. The data included in Exhibit AAAA summarizes the participation data provided to the NCAA by its member institutions.

///

///

///

///

I make this declaration of my own personal knowledge, and if called upon to do so, I could, and would, competently testify about the matters discussed herein.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 20th day of December 2007, at Indianapolis, Indiana.

Todd Petr

# EXHIBIT C

PORTER | SCOTT
A PROFESSIONAL CORPORATION
Nancy J. Sheehan, SBN 109419
George A. Acero, SBN 226709
350 University Avenue, Suite 200
Sacramento, California 95825
(916) 929-1481
(916) 927-3706 (facsimile)

**Attorneys for Defendants:** REGENTS OF THE UNIVERSITY OF CALIFORNIA, LARRY VANDERHOEF (erroneously sued as LAWRENCE VANDERHOEF), GREG WARZECKA, PAM GILL-FISHER, ROBERT FRANKS and LAWRENCE SWANSON

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

AREZOU MANSOURIAN, LAUREN MANCUSO, NANCY NIEN-LI CHIANG, and CHRISTINE WING-SI NG; and all those similarly situated,

Plaintiffs,

vs.

REGENTS OF THE UNIVERSITY OF CALIFORNIA, et al.,

Defendants.

CASE NO. 2:03-CV-02591-FCD-EFB

**DECLARATION OF LARRY SWANSON IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**Date: March 28, 2008**
**Time: 10:00 a.m.**
**Courtroom: 2**

I, Larry Swanson, declare the following:

1. I am employed at U.C. Davis as an Associate Director of Athletics and have held that position since 1987. My employment with the Athletic Department began in 1986. My duties include overseeing the planning, direction, organization and implementation of the marketing, promotions, sales, publications, sports information and youth and community programs for the Intercollegiate Athletics program. I also supervise the varsity sports of wrestling, men's and women's tennis, men's and women's soccer, and women's gymnastics. I have supervised the wrestling team since July 2000.

My supervision of these sports includes regular meetings with the coaches and familiarity with the sports, the progress of the teams, and the rules and regulations pertaining to the sports.

2. Up until U.C. Davis began transitioning to Division I in 2003, U.C. Davis was an NCAA Division II school. However, the wrestling team competed at the Division I level, because of lack of available competition at the Division II level in this geographic area. U.C. Davis wrestles in the Pac-10 Conference. The other schools that are members of the Pac-10 Conference for the sport of wrestling are Arizona State, Boise State, Cal. Poly, Cal. State Bakersfield, Cal State Fullerton, Oregon, Oregon State, Portland State and Stanford. All these schools, and no others, have been in the wrestling PAC-10 conference since at least the 2000-2001 season when I became the supervisor of the wrestling team.

3. Men's varsity wrestling is an NCAA sponsored sport. U.C. Davis' wrestling team is counted as a men's sport for purposes of compliance with NCAA regulations relating to the minimum number of teams that a school must have in order to be a member of a particular Division. This campus has never declared wrestling to be a contact sport within the meaning of Title IX. Accordingly, students of both genders may try out for the team despite is characterization as a men's team for NCAA purposes.

4. Since I have been the supervisor of the wrestling team, it has been my expectation that any student who is selected for the wrestling team meet NCAA eligibility requirements, comply with all applicable NCAA regulations relating to wrestling, and comply with U.C. Davis athletic eligibility requirements. In the course and scope of my duties as Associate Director of Athletics, I was also aware that the Athletic Department also imposed these requirements before I became supervisor of the wrestling team.

5. Since I have been the supervisor of the wrestling team, the head coach of the wrestling team is solely responsible for determining which students will be awarded a slot on the team roster, based on his assessment of which candidates are most skilled and qualified to participate in collegiate level wrestling at the Division I level (assuming the student-athlete meets all eligibility requirements). In the course and scope of my duties as Associate Director of Athletics, I was also aware that this is, and has been, the general practice for all teams since I have worked in the Athletic Department. To my

recollection, the only exception to this practice occurred when the women wrestlers were reinstated to the wrestling team in mid 2001 after they filed their OCR complaint.

6. During the time Michael Burch was the head wrestling coach, women participated in the wrestling program. Since I began working with the Athletic Department in 1986, there has never been a separate women's wrestling team at U.C. Davis. To my knowledge, none of the schools in the Pac-10 have, or have ever had, a separate women's wrestling team although I understand that one or two Pac-10 teams may have had a couple of female wrestlers on the men's team. I am not aware of any women's intercollegiate league in which schools have women's wrestling teams. Michael Burch never asked me to assist him in setting up a competition against a specific school with a women's collegiate varsity wrestling team for the purpose of having that school's women's team compete against U.C. Davis' women's wrestlers. Since I have been supervisor of the wrestling team, U.C. Davis' wrestling team has followed NCAA rules pertaining to men's wrestling, including using collegiate style wrestling techniques and scoring, as opposed to the freestyle techniques used in some open tournaments or Olympic competition. I also understand that this was also true before I became supervisor of the wrestling team and that this has been true for decades.

7. Each season, the U.C. Davis wrestling team competes in a set schedule of competition. The competition includes dual (one on one) meets with other schools in the Pac-10 conference; participation in invitational tournaments, participation in open tournaments, and participation in NCAA championship events (if applicable). Open tournaments are open to wrestlers participating on behalf of their schools (known as "attached" wrestlers) and also to any other member of the public who wishes to attend, including university students who are redshirting or otherwise not wrestling on behalf of their school. Participants who are not representing a particular school are known as "unattached" participants. Since I have been the supervisor of the wrestling team, no woman wrestler ever participated in a dual meet or a tournament on behalf of U.C. Davis. I understand that even before then, the women wrestlers participated in open tournaments, but always participated as unattached.

8. For a number of years U.C. Davis held an annual open tournament called the Aggie Open. This event was primarily a fundraiser but also provided opportunities for wrestlers from other schools or clubs to compete in an open tournament (as opposed to a scheduled meet). The Aggie Open

tournament has been discontinued since 2004 because of a conflict with the Big West Conference basketball schedule. During the weekends in January that the Aggie Open was traditionally held, the campus is hosting either a men's or women's Big West Conference basketball game in the arena which would have been used to host the Aggie Open. The discontinuation of the Aggie Open has nothing to do with women wrestlers. While U.C. Davis hosted the Aggie Open, I was not aware of any requirement that the date and time of the Aggie Open had to be specifically communicated to every person on the wrestling team or any person that the Athletic Department had reason to believe would be interested in attending, nor have I ever enforced such a requirement as the supervisor of the wrestling team.

9. In approximately early May 2001, I received a memo from CHRISTINE NG, AREZOU MANSOURIAN and Samantha Reinis dated April 30, 2001, stating that they had filed a complaint with the Office for Civil Rights for "sexual discrimination" in regard to the wrestling team. Attached to the Appendix of Exhibits, marked as Exhibit UU is a true and correct copy of that memo. While I understood from this letter, other communications from the Plaintiffs and Coach Burch, and statements made in the media, that the women wrestlers felt they were being discriminated against by not being able to wrestle and that their coach felt he was being retaliated against, neither the women wrestlers, nor anyone acting on their behalf, ever told me, or even made statements suggesting to me, that the entire women's intercollegiate athletics program at U.C. Davis was out of compliance with Title IX by not providing sufficient athletic participation opportunities for women from the 1999-2000 academic year (when the women were first cut from the team) forward, until I heard that such allegations were made in the filing of the Plaintiffs' lawsuit. Further, no person ever told me that U.C. Davis' intercollegiate athletics program unlawfully provided insufficient participation opportunities to women at a program wide level at any time from the 1999-2000 academic year, forward, until I first heard of allegations of program-wide deficiencies after the filing of the Plaintiffs lawsuits. My understanding up until Plaintiffs' lawsuit was filed (and even for sometime after that) was that the Plaintiffs were complaining about being unable to wrestle on the same team as the male athletes and were not complaining that U.C. Davis' intercollegiate athletics program as a whole was unlawfully providing insufficient total participation opportunities.

I make this declaration of my own personal knowledge and, if called upon to do so, I could and would competently testify about the matters discussed herein.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed this 21st day of December 2007, at Davis, California.

Larry Swanson

# EXHIBIT D

PORTER | SCOTT
A PROFESSIONAL CORPORATION
Nancy J. Sheehan, SBN 109419
George A. Acero, SBN 226709
350 University Avenue, Suite 200
Sacramento, California 95825
(916) 929-1481
(916) 927-3706 (facsimile)

**Attorneys for Defendants:** REGENTS OF THE UNIVERSITY OF CALIFORNIA, LARRY VANDERHOEF (erroneously sued as LAWRENCE VANDERHOEF), GREG WARZECKA, PAM GILL-FISHER, ROBERT FRANKS and LAWRENCE SWANSON

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

AREZOU MANSOURIAN, LAUREN MANCUSO, NANCY NIEN-LI CHIANG, and CHRISTINE WING-SI NG; and all those similarly situated,

Plaintiffs,

vs.

REGENTS OF THE UNIVERSITY OF CALIFORNIA, et al.,

Defendants.

CASE NO. 2:03-CV-02591-FCD-EFB

**DECLARATION OF MICHELLE ROPPEAU IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**Date: March 28, 2008**
**Time: 10:00 a.m.**
**Courtroom: 2**

I, Michelle Roppeau, declare the following:

1. I am the Director of Athletic Academic Advising for the University of California, Davis campus and have held this position since 1997. As the Director of Athletic Academic Advising, I am responsible for coordinating and administering advising services for the Intercollegiate Athletics Program. My duties include assisting student-athletes with their choice of major, course selection, study skills, internship placement, and NCAA and conference eligibility. I am also a staff advisor for the Student-Athlete Advisory Committee ("S.A.A.C."). As part of my duties, I regularly review NCAA

eligibility rules and regulations. I am also familiar with the UC Davis Intercollegiate Athletics Compliance Manual and use that document in the course and scope of my job duties.

2. Incoming students who want to participate in varsity athletics must have completed certain core courses in high school and have obtained a certain level SAT score. Students must be registered with the NCAA Eligibility Center (formerly known as the Eligibility Clearinghouse) and once enrolled at UC Davis, must be enrolled in at least a minimum full-time program of study (equivalent to 12 units per quarter) and maintain satisfactory progress toward a baccalaureate or equivalent degree. This is required by NCAA Bylaw 14. A student whose grade point average falls below a certain number becomes academically ineligible to compete in varsity athletics.

3. While U.C. Davis has not declared wrestling to be a contact sport, and thus students of both genders may try out for the team, all team members (regardless of their gender) must meet and comply with NCAA rules. This has been the case for the entire time I have been the Director of Athletic Academic Advising (starting in 1997). Additionally, since the time I have been Director of Athletic Academic Advising, it has been a requirement that all UC Davis student-athletes who wish to participate in UC Davis intercollegiate athletics program meet UC Davis' athletic eligibility criteria, which are separate from the NCAA criteria.

4. As the Director of Athletic Academic Advising, I am familiar with the NCAA regulations relating to maximum limits for intercollegiate athletics eligibility. Generally, a student-athlete in a Division I sport cannot engage in more than four seasons of intercollegiate competition in any one sport. Eligibility is further limited by NCAA Bylaw 14.2.1 which is known as the "five-year rule." Rule 14.2.1 provides that a student-athlete must complete all his or her seasons of intercollegiate athletics competition within five calendar years from the beginning of the first quarter or semester in which the student-athlete first registered for full-time status in a collegiate institution. The exceptions to this rule are for time spent in service in the armed forces, on official church missions, on a military sea transport service, in Peace Corps services, and a one-year pregnancy allowance. Attached to the Appendix of Exhibits, marked as Exhibit ZZZ is a true and correct copy of Rule 14.2.1 from the NCAA Division I Manual for the 2004-2005 academic year. This same rule has been in effect since I began working with the Athletic Department in 1997.

5. I have reviewed the academic records of the Plaintiffs and former Plaintiff Nancy Chiang. Chiang first enrolled as a full-time student at UC Davis in the Fall of 1998. Her varsity intercollegiate athletics eligibility expired in June 2003 pursuant to NCAA's five-year rule. There is no intercollegiate competition or required practice in the summer, thus her eligibility ended at the end of the spring quarter of her fifth year. Further, Chiang was academically disqualified from UC Davis as of the Winter Quarter of 2001 (January 2001) because of her grades and thus became ineligible at that time, pursuant to NCAA Rule 14.01.2. AREZOU MANSOURIAN first enrolled as a full-time student at UC Davis in the Fall of 2000. She graduated in June 2004. Her varsity intercollegiate athletics eligibility expired in June 2005 pursuant to NCAA's five-year rule. LAUREN MANCUSO first enrolled as a full-time student at UC Davis in Fall 2001. She was awarded her degree in September, 2006. Her varsity intercollegiate athletics eligibility expired in June, 2006 pursuant to NCAA's five-year rule. CHRISTINE NG first enrolled as a full-time student at UC Davis in Fall 1998. She was awarded her degree in September 2002. Her varsity intercollegiate athletics eligibility expired in Spring 2003 pursuant to NCAA's five-year rule.

6. I have also reviewed the academic records of former women wrestlers Abielle Schwarzberg and Samantha Reinis. Abielle Schwarzberg entered UC Davis as a transfer student in the Fall of 1999. She was no longer registered as a student at UC Davis as of February, 2001. Samantha Reinis entered U.C. Davis in Fall 1997. She was last enrolled in UC Davis in Spring 2001, but never applied for her degree and has not graduated from UC Davis. Her athletic eligibility expired in Spring 2002.

7. The Athletic Academic Advisors provided head coaches with regular updates, in the form of written participation lists prior to each scheduled competition informing them if any students are ineligible to practice or compete up to the 2002-2003 year. Later, after the competition occurred, the coaches would fill in which students-athletes participated in the competition (thus the name "participation list"). After the 2002-2003 season, we began to e-mail the information to the coaches and also keep the eligibility information in a regularly updated electronic database which was accessible to the coaches 24 hours a day. Exhibit AAA to the Appendix of Exhibits is a true and correct copy of wrestling eligibility documents for the 1998/1999 season. As these documents show,

for a significant period of that season, CHRISTIE NG was not eligible because she was missing an Academic Plan Form. Nancy Chiang was ineligible because she was missing a physical and confirmation that she had completed the NCAA clearinghouse. Even though women's wrestling is not an NCAA sport, anyone participating on the wrestling team (which is considered a men's team for NCAA purposes) must complete those documents in order to be eligible to practice and/or compete. Attached to the Appendix of Exhibits, marked as Exhibit GGGG, are true and correct copies of 1999-2000 Wrestling team participation lists covering competitions in January and February 2000. UC Davis maintains the participation lists in the ordinary course and scope of its business and it was UC Davis' regular practice in the 1998/1999 and 1999/2000 school years to prepare written participation lists for the wrestling team prior to each scheduled competition.

I make this declaration of my own personal knowledge and, if called upon to do so, I could and would competently testify about the matters discussed herein.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed this 3rd day of Jan. 2008, at Davis, California.

Michelle Roppeau
Michelle Roppeau

# EXHIBIT E

PORTER | SCOTT
A PROFESSIONAL CORPORATION
Nancy J. Sheehan, SBN 109419
George A. Acero, SBN 226709
350 University Avenue, Suite 200
Sacramento, California 95825
(916) 929-1481
(916) 927-3706 (facsimile)

**Attorneys for Defendants:** REGENTS OF THE UNIVERSITY OF CALIFORNIA, LARRY VANDERHOEF (erroneously sued as LAWRENCE VANDERHOEF), GREG WARZECKA, PAM GILL-FISHER, ROBERT FRANKS and LAWRENCE SWANSON

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

AREZOU MANSOURIAN, LAUREN MANCUSO, NANCY NIEN-LI CHIANG, and CHRISTINE WING-SI NG; and all those similarly situated,

Plaintiffs,

vs.

REGENTS OF THE UNIVERSITY OF CALIFORNIA, et al.,

Defendants.

CASE NO. 2:03-CV-02591-FCD-EFB

**DECLARATION OF LENNIE ZALESKY IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OR**

**Date: March 28, 2008**
**Time: 10:00 a.m.**
**Courtroom: 2**

I, Lennie Zalesky, declare the following:

1. I am the head wrestling coach at U.C. Davis and have held this position since August 2001. Prior to being hired into this position, I had extensive experience as a wrestler and in coaching wrestling at both the high school and collegiate levels. I attended the University of Iowa and was on the wrestling team when it won four consecutive NCAA team titles. I was a three-time All-American wrestler; won three Big Ten titles; and was named MVP in 1982. I have competed internationally and won silver medals at the Pan American games and the World Cup. I coached at the high school level

for eight years in Alaska, taking the team to a state title and guiding seventeen wrestlers to individual state championships. In 1996, I was named Alaska's Coach of the Year. I started my collegiate coaching career at my alma mater, where I served as an assistant coach under legendary coach/wrestler Dan Gable. Since I have taken over as the head coach at U.C. Davis, 37 wrestlers have placed in the top six places in the Pac-10, including the team's first ever champion. In the seven years that I have been the head coach, I have sent over twenty wrestlers to the N.C.A.A. Division I championship. In 2007, I was named as the Pac-10 Coach of the Year. That same year, I coached senior Derek Moore, who was named as the Pac-10 Wrestler of the Year and NCAA Outstanding Wrestler. This was the first time a U. C. Davis wrestler had earned that title.

2. U.C. Davis wrestles in the Pac-10 Conference. The other schools that are members of the Pac-10 Conference for the sport of wrestling are Arizona State, Boise State, Cal. Poly, Cal. State Bakersfield, Cal State Fullerton, Oregon, Oregon State, Portland State and Stanford. All these schools, and no others, have been in the wrestling PAC-10 conference since I have been the head coach of the wrestling team. As the head coach of the team, I have the sole discretion to select those student-athletes who will be placed on the team roster for the competition season. Some of the members of the wrestling team have been recruited out of high school. Others try out for the team as walk-ons. I have conducted try-outs for the wrestling team at U.C. Davis using the same approach I have always used for selecting a team, either at the high school or collegiate level. Wrestling practice starts before the first day of competition (usually about seven weeks before the first competition). During these pre-competition practices, those student-athletes who hope to obtain a spot on the team roster must come to practice daily, engage in conditioning and weight training, and participate in drills. Shortly before the competition season begins, I conduct wrestle-offs so that the assistant coaches and I can determine which student-athletes are the most skilled and best qualified in each weight class. There are a limited number of roster spots allotted to the wrestling team. In order to field a team that can compete with Pac-10 schools I must select only those wrestlers who are the most skilled within each weight class. The skills necessary to compete as a wrestler (male or female) at the NCAA Division I level are far greater than skills necessary to compete in open tournaments.

3. Collegiate style wrestling rules are used during the wrestle-offs as those are the rules used during dual meets and NCAA sponsored tournaments. The UC Davis wrestling team practices and competes using collegiate style wrestling rules, not freestyle or folk-style wrestling rules.

4. Due to the roster limits, each year I have coached at UC Davis it has been necessary to cut a number of student-athletes prior to the start of competition. For those who are cut, I urge them to continue to participate in wrestling via the campus wrestling club, if they are interested in doing so.

5. When I was hired by Athletic Director Warzecka in the summer of 2001 I was told that some of the female wrestlers had filed a complaint with the Office for Civil Rights because they believed they had been wrongfully removed from the wrestling team. It was my understanding that the women did not contend that they could adequately compete for spots on the roster, but wanted to be allowed to be part of the team over and above the roster maximum. I was told by Mr. Warzecka that the campus had worked with the Office for Civil Rights in investigating the complaint and that as a result, had reached an agreement that selections for a place on the wrestling team roster would be made by the team coach, who would select those athletes who demonstrated the highest skill and competitive ability in their weight class. This was consistent with my established practice.

6. In the fall of 2001, Plaintiffs CHRISTINE NG and AREZOU MANSOURIAN came to speak with me. They told me that they did not have the skills or strength necessary to compete against males for a place on the team. Given their statements, I urged them to consider developing their skills as wrestlers by participating on the wrestling club sport team. However, I did not preclude them from trying out. They were welcome to try out for the team, as were any other students. I required all candidates for the wrestling team, regardless of gender, size, ability or strength, to engage in the wrestle-off process in order to earn a place on the team. This is a fundamental aspect of coaching a varsity wrestling team. I was allotted a roster maximum or cap of thirty wrestlers. There are ten weight classes in collegiate wrestling, ranging from a low of 125 to a high of 285. In selecting the members of the team that year, per my usual practice, I looked for the most skilled and competitive wrestlers in each weight class. Ms. MANSOURIAN did not appear for the wrestle-offs and thus she was cut from the team on October 12, 2001. Ms. NG and LAUREN MANCUSO did try out. They were in the lightest weight class for collegiate wrestlers. Ms. NG participated in a wrestle-off with Ms.

MANCUSO and was defeated by Ms. MANCUSO. Ms. MANCUSO then participated in a wrestle-off with a male, and she was defeated. The male who defeated Ms. MANCUSO was also cut from the team because he did not possess the necessary skills. As a result of the wrestle-offs, Ms. NG and Ms. MANCUSO were cut on October 30, 2001, as were some males who also did not have the skills or abilities necessary to make the team and compete at the NCAA Division I level. I have never heard of Nancy Chiang and a person with that name has never contacted me about wrestling at UC Davis and did not participate in the wrestle-off process. The Fall of 2001 was the last time that Ms. MANCUSO, Ms. MANSOURIAN or Ms. NG appeared at any wrestling team event as participants.

7. Exhibit MMM to the Appendix of Exhibits is a true and correct copy of an e-mail sent to me by AREZOU MANSOURIAN on October 10, 2001. In this e-mail, Ms. MANSOURIAN indicated that she was too busy to participate in varsity wrestling and would concentrate on trying to wrestle at the club level. I took her message at face value, and she never told me that she made any false statements in it.

8. In a typical season, the U.C. Davis competes in 16 competitions consisting of both dual meets and tournaments. The dual meets are competitions with other schools that are also members of the Pac-10. Most of the tournaments are invitational, meaning that a team and its wrestlers can only compete if invited by the host. Per NCAA rules, only a certain number of UC Davis' wrestlers can compete on behalf of UC Davis at an invitational tournament. There are also wrestling tournaments known as "open" tournaments. Any person can compete in an "open" tournament, however, only a few wrestlers participate on behalf of UC Davis in open tournaments. Other UC Davis wrestlers who do not participate on behalf of UC Davis can still participate at an open tournament but must compete "unattached" (meaning as independent contestants). Unattached wrestlers do not wear the UC Davis uniform, can't put the UC Davis team name on their bracket entries, and cannot get tournament related expenses paid by their school (such as travel, lodging, and entry fees). Members of my team participate 0 to 3 open tournaments per season. For me, open tournaments are most typically used to allow redshirt student-athletes (who are not permitted to compete on behalf of UC Davis) to get an opportunity to engage in competition without forfeiting their red shirt status, although there might be a couple of other reasons to attend an open (for example, I take my team to the Omaha Open to get a

chance to compete against nationally ranked wrestlers). The primary competition for the wrestling team lies in the dual meets against PAC-10 schools and the NCAA championships. I would never recruit a wrestler or grant a roster slot to any student-athlete, male or female, who was solely interested in participating in open tournaments. While all wrestlers I select may not participate in a competition (such as student-athletes who are redshirting), my expectation is that every student-athlete who makes the team will at some point become a wrestler who has a chance to viably compete in dual meets and championships.

9. I am not aware of any Division I school that has a separate women's wrestling team. During the time I have been the head wrestling coach at UC Davis, I have never seen a woman compete on behalf of any of the men's teams against which UC Davis competes. To my knowledge, the only current source of possible competition for women wrestlers is Menlo College in California, Pacific University in Oregon, another school in Missouri, and perhaps a one or two others others. To my knowledge, none of these schools are NCAA Division I schools and none of them are in the Pac-10 wrestling conference. Since I have been the head wrestling coach, UC Davis typically only wrestles against one Division II school a year. I am aware the Menlo's wrestling team participates in the NAIA rather than the NCAA. I rarely compete against NAIA schools, to my recollection I have only had three to four competitions against NAIA total since I have been head coach.

10. The Aggie Open wrestling tournament that used to be annually held at UC Davis. We hosted an Aggie Open in early 2002, the first season I became head coach. Information about the tournament, including the fact there was a women's division, was posted on campus websites and I also contacted a few coaches about the tournament. I contacted the coach of the women's wrestling team at Menlo College to see if he was going to have any of his wrestlers compete in the Aggie Open. He informed me that they would not be attending the Aggie Open, because the team was booked that weekend in another competition. The Aggie Open tournament has been discontinued since 2004 because of a conflict with the Big West Conference basketball schedule. During the weekends in January that the Aggie Open was traditionally held, the campus is hosting either a men's or women's Big West Conference basketball game in the arena which would have been used to host the Aggie Open. To my knowledge, the discontinuation of the Aggie Open had nothing to do with the women

wrestlers. During the years in which I participated in hosting the Aggie Open, I felt I made reasonable efforts in communicating the news about the tournament to interested persons such as by posting information about the tournament on-line and contacting a few coaches. I did not make an effort to personally communicate the news of the tournament to every person who could conceivably be interested and never made efforts to conceal information about the tournament to any women wrestlers.

11. Since I have been the head wrestling coach, I have only received a few inquiries per year from female students or potential students regarding wrestling at UC Davis. To my recollection, in my first year I received about five to six inquiries and maybe one to two inquiries the years thereafter. Most of the women inquired about a separate women's team or a club team rather than participating on the men's team. I essentially told any women inquiring the same thing I tell males who inquire. Earning a spot on the team roster is done via a competitive process that requires a demonstration of the skills necessary to wrestle at the Division I varsity level. There is a limit to how many student-athletes can be on the team. Those who do not have the necessary skill to earn a spot on the varsity team are welcome to participate in wrestling through a campus sport club team.

I make this declaration of my own personal knowledge and, if called upon to do so, I could and would competently testify about the matters discussed herein.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed this 10 day of January 2008, at Davis, California.

[signature]
Lennie Zalesky

# EXHIBIT F

PORTER | SCOTT
A PROFESSIONAL CORPORATION
Nancy J. Sheehan, SBN 109419
George A. Acero, SBN 226709
350 University Avenue, Suite 200
Sacramento, California 95825
(916) 929-1481
(916) 927-3706 (facsimile)

**Attorneys for Defendants:** REGENTS OF THE UNIVERSITY OF CALIFORNIA, LARRY VANDERHOEF (erroneously sued as LAWRENCE VANDERHOEF), GREG WARZECKA, PAM GILL-FISHER, ROBERT FRANKS and LAWRENCE SWANSON

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

AREZOU MANSOURIAN, LAUREN MANCUSO, NANCY NIEN-LI CHIANG, and CHRISTINE WING-SI NG; and all those similarly situated,

Plaintiffs,

vs.

REGENTS OF THE UNIVERSITY OF CALIFORNIA, et al.,

Defendants.

CASE NO. 2:03-CV-02591-FCD-EFB

**DECLARATION OF GREG WARZECKA IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OR**

**Date: March 28, 2008**
**Time: 10:00 a.m.**
**Courtroom: 2**

I, Greg Warzecka, declare the following:

1. I am the Athletic Director at UC Davis and have held this position since 1995. I am responsible for the overall direction, leadership, and management of the Intercollegiate Athletics program ("ICA"), including issues such as budgets, personnel actions, athlete recruitment, scheduling of competitions, purchasing equipment, NCAA compliance, and fund-raising. I formally oversaw the administration of the intramural and club sport programs until approximately April 2005.

2. UC Davis currently offers 26 sports, 14 for women and 12 for men. The women's sports are: basketball, cross-country, golf, gymnastics, lacrosse, rowing, soccer, softball swimming/diving, tennis, indoor track, outdoor track, volleyball, and water polo. The men's sports are: baseball, basketball, cross-country, football, golf, soccer, swimming/diving, tennis, indoor track, outdoor track, water polo, and wrestling. All these sports were offered by UC Davis when I became Athletic Director in 1995 except: women's water polo (began competing in the 1996/1997 academic year), women's lacrosse (began competing in the 1996/1997 academic year), women's rowing (began competing in the 1996/1997 academic year), men's and women's indoor track (officially added by UC Davis as a separate varsity sport in the 1998/1999 academic year - Winter of 1999), and women's golf (began competing in 2005/2006 academic year). When I was hired in 1995, UC Davis' ICA program participated under NCAA's Division II. In 2003, UC Davis was provisionally accepted into Division I. In 2007, the transition process was completed and UC Davis officially became a Division I member institution. As a Division I provisional institution, UC Davis began competing in the Big West Conference in 16 of the 17 sports offered by that conference as a provisional member in 2003 and became a full member as of July 2007.

3. In August 1995, Michael Burch was hired as the head coach for the UC Davis wrestling team. He continued in that position until June 2001 based on a yearly contract which was continuously renewed up to that point. I made the decision not to renew Burch's contract a few months before his contract expired (the contract expired on June 30, 2001). Lennie Zalesky was hired as the new head coach for the UC Davis wrestling team beginning in Fall 2001, and remains in that position today.

4. From about 1995-2002, the Athletic Department was saddled with a significant budget deficit and funding challenges. Further, expenses increased when UC Davis joined the California Collegiate Athletic Association in the 1998/1999 academic year, which had a wider competitive geographic region (which increased travel expenses) and permitted its member institutions to offer athletic grants-in-aid. Previously, UC Davis participated in the Northern California Athletic Conference which did not permit its member schools to offer grants-in-aid. At the same time, UC Davis continued to take steps consistent with the mandate of Title IX to provide equitable opportunities for both genders in regard to athletics. In order to address these issues, the Athletic Department started a Roster

Management Program that implemented a "cap" (maximum) on the number of student-athletes on each men's sports team. Limiting the number of athletes on these teams helped reduce the annual costs and assisted in reaching proportionality between the number of male and female undergraduate students and the number of male and female varsity athletes. I was responsible for the decision to implement the Roster Management Program. The initiation of the Roster Management Program was conveyed to UC Davis coaching staff in a memorandum. Attached to the Appendix of Exhibits, marked as Exhibit XX, is a true and correct copy of the memorandum notifying all coaches of the initiation of the Roster Management Program. In November 1998, the Roster Management Program officially went into effect. In a letter, I asked to meet with the coaches three days before the start of the first competition for their sport so they could provide me a squad list (roster) consistent with the limit that I had placed on their team.

5. On October 9, 2000, I issued a letter to Coach Burch advising that the roster limit for wrestling was thirty student-athletes. I derived this number from the national average size of Division I wrestling teams as reported by the NCAA. Per the letter, Coach Burch was directed to "submit to Associate Athletic Director Swanson your Squad List with 30 names on it." The letter did not make any reference to the gender of the students whom Coach Burch placed on the squad. Attached to the Appendix of Exhibits, marked as Exhibit YY, is a true and correct copy of the October 9th letter. Although students of both genders may try out for the wrestling team at UC Davis, it is considered a men's sport for NCAA purposes because the NCAA sponsors only men's wrestling. In October 2000, as well as today, it was my understanding, as well as my expectation, that all persons on any team roster, irrespective of gender, would comply with UC Davis and NCAA rules.

6. In early October 2000, Burch asked for four extra slots, for a total of 34. In October 2000, Burch did not ask me to expand the cap to make room for the women wrestlers. He only expressed interest in expanding the roster for four additional males. By October 2000, I was aware of the opinion in the case *Neal v. Board of Trustees of the California State Universities*, 198 F.3d 763 (9th Cir. 1999), and its holding that universities could comply with Title IX by managing the rosters of men's teams by means of a roster cap. As a result of Coach Burch's request, I increased the roster maximum for wrestling to 34 student-athletes for the 2000/2001 season. When I met with Coach Burch

in October 2000 to discuss the roster that he had prepared, I asked him what was going on with the women wrestlers as they were not included on his proposed roster. His response was that he did not "give a damn" about the women, that they were not competitive, and that he did not have the time to devote to them. At that time, Coach Burch was one of several part-time head coaches. In addition to his coaching duties, he had a teaching appointment as a Lecturer with the Religious Studies Department. In light of his comment, I suggested that a wrestling sport club be started so the women could participate in the sport of wrestling at a level that was commensurate with their skills and abilities (as I understood them from Coach Burch's comments).

7. My comments to Burch were suggestions. Selecting student-athletes for inclusion on a team squad list or roster is solely the responsibility of the head coach of each varsity team. Burch had the option of granting one of his roster spots to the women wrestlers. I did not care about the gender of the student-athletes who were on the roster that Coach Burch created. The important point was that he not exceed his expanded maximum of 34 student athletes. In my opinion, the roster maximum or cap applied to all members of men's teams, whether or not they were male. If women who were not competitive were permitted to remain on a team over and above the roster cap, that would be unfair to males who were not included on the team because, to my knowledge from Burch's comments, the women wrestlers were not competitive with any of the male athletes on the team or even those who tried out for the team. I believed then, and still believe today, that such a situation could lead to a reverse discrimination lawsuit from more skilled male athletes who were cut from the team.

8. To my recollection, I have never directed a coach to include any student on his/her roster except on one occasion when I (along with Dennis Shimek and Robert Franks) decided to reinstate the women wrestlers to the wrestling team roster after they filed their Office for Civil Rights ("OCR") complaint in 2001. I have no recollection of ever ordering any student-athlete to be removed from any team. In the past, I have been consulted about removing student-athletes from teams for disciplinary reasons by coaches. To my best recollection, I have always concurred with the coach's proposed course of action and I have never had to order a coach to remove a student-athlete. As noted above, I also recall discussing the status of the women wrestlers with coach Burch and suggesting that they participate in a club sport. Selecting team members is not part of my job since I do not coach any

teams and have little basis for knowing which students demonstrate the greatest level of skills and abilities in each varsity sport.

9. I received a memo from CHRISTINE NG, AREZOU MANSOURIAN and Samantha Reinis dated April 30, 2001, informing me and others that they had filed a complaint with the OCR for "sexual discrimination" in regard to the wrestling team. Attached to the Appendix of Exhibits as Exhibit UU, is a true and correct copy of that memo. This was the first notice I received that the Plaintiffs had filed an OCR complaint. While I understood from this letter and other communications from the Plaintiffs and Coach Burch, and statements made in the media, that the women wrestlers felt they were being discriminated against by not being able to wrestle and that their coach felt he was being retaliated against, neither the women wrestlers, nor anyone acting on their behalf, ever told me or even made statements suggesting to me that the entire women's intercollegiate athletics program at UC Davis was out of compliance with Title IX by not providing sufficient athletic participation opportunities for women until I heard that such allegations were made in the filing of the Plaintiffs' lawsuit. My understanding up until Plaintiffs' lawsuit was filed (and even for sometime after that) was that the Plaintiffs were complaining about being unable to wrestle on the same team as the male athletes and were not complaining that UC Davis' intercollegiate athletics program as a whole was unlawfully providing insufficient total participation opportunities. From the time I was hired up until the Plaintiffs filed their OCR complaint, the Athletic Department had not been the subject of any internal grievance, OCR complaints, or lawsuits relating to gender equity in athletics. In fact, a few months before the Plaintiffs filed their lawsuit in December 2003, UC Davis had already commenced the process of adding another women's team. Based on that action, I was of the belief that UC Davis complied with Title IX with respect to participation opportunities on prong two.

10. As a result of the Plaintiffs' OCR complaint, the University made an informal inquiry as to what occurred. After the informal inquiry, the conclusion was reached by me, the campus Title IX compliance officer Dennis Shimek, and Associate Vice Chancellor Robert Franks that the women had not been given a full explanation of their status after Coach Burch submitted a final team roster on which they were not included (resulting in them being cut from the team). On May 9, 2001, I sent a letter to Burch requesting that he add NG, MANSOURIAN, Reinis and Chiang to the team's pre-

season roster for the 2001-2002 season, provided they met NCAA, UC Davis, and the wrestling team requirements. Attached to the Appendix of Exhibits, marked as Exhibit MMMM, is a true and correct copy of that letter. Coach Burch declined to abide by my request. I reported that development to my supervisor, Mr. Franks. I participated in helping the University respond to a formal investigation instituted by the OCR based on the Plaintiffs' and Michael Burch's OCR complaints. To my understanding, the OCR closed the investigation into the women wrestlers' OCR complaints after finding no wrongdoing on the part of the University and having the University agree to enter into a Voluntary Resolution Plan ("VRP"). I participated in reviewing drafts of the VRP prepared by Dennis Shimek. Mr. Shimek was ultimately responsible for finalizing the VRP.

11. In mid June 2001, Michael Burch issued a request to offer athletic grants-in-aid to three women wrestlers. By the time the Athletic Department received this request, Burch had already been informed that his contract was not renewed and it was my understanding that all other requests for financial aid for the wrestling team had previously been submitted. Further, it was my understanding that the wrestling team was operating at a significant budget deficit at the time he submitted the belated request for financial aid for the women wrestlers. Given these circumstances, I felt it was more appropriate to discuss any further expenditures with the incoming wresting coach to see what funds, if any, would be spent on grants-in-aid after considering the perspective of the new coach and the budget deficit.

12. In the late 1990's, UC Davis began preparing a gender equity plan. The plan was initially drafted by me in collaboration with Pam Gill-Fisher. After we prepared our initial draft, it was forwarded to the Title IX Workgroup (of which Ms. Gill-Fisher and I are both members) for comment and revision. In about the Spring of 2001, the Work Group developed a final version of the plan. Attached to the Appendix of Exhibits, marked as Exhibit NNNN, is a true and correct copy of the final version of the 2001/2002 plan. Subsequent to issuing the final version on the plan, UC Davis regularly began to update and revise the plan over the course of time in response to changes that occurred in the ICA program.

13. In the early or mid 1990's, a few women and men from the outdoor track team began competing in indoor track competitions with other schools. Eventually, sufficient male and female

track student-athletes began competing so as to allow men's and women's indoor track to qualify for NCAA championships. However, despite the fact that UC Davis had student-athletes participating in indoor track, the indoor track team was not considered a separate team from the outdoor track team by UC Davis. Women's and men's indoor track were not formally established as separate teams at UC Davis until Winter 1999 (part of the 1998/1999 school year). I decided to declare the indoor and outdoor track teams as separate teams because I felt the evolution of those teams had developed to the point where they justified a status as independent teams. At some point in the late 1990's, I had several discussions with Deanne and Jon Vochatzer (the men's and women's indoor track coaches) regarding the status of indoor track. They informed me that they preferred to have a full-fledged indoor track team, but could not do so solely by borrowing from the current budget of the outdoor track program. They noted that the indoor track program had become successful and even a few student athletes won individual Division II championships. They also asked me to make a decision as to whether the ICA program would be willing to fully support an indoor track program. Around the time of these conversations, I also became aware that the NCAA began reimbursing Division II schools for the NCAA indoor track championships which partially eased the financial pressures of allowing track student-athletes to compete at the post-season championship level in indoor track. I eventually agreed that fully developing indoor track would be beneficial to UC Davis' ICA program since indoor track helped develop the track program, there was significant student-athlete interest and, as a whole had a proven record of success. I then began granting additional funding to the track budget specifically to benefit indoor track. At this point, I made the decision, within my authority as the Athletic Director, to declare indoor track as a separate sport. I note that at UC Davis, it is the Athletic Department that has the prerogative to determine whether or not a particular sport is a "team." For example, UC Davis has a swimming/diving team that participates in two separate competitions. Yet, at UC Davis, both swimming and diving participants are on the same "team." Women's wrestling was not a separate team when I became Athletic Director in 1995. I have never declared women's wrestling to be a separate team since I became Athletic Director nor has there ever been a separate team budget for a women's wrestling team. Further, Coach Burch had no authority to make women's wrestling a separate team, even if he believed there was a separate women's wrestling team.

14. In 2003, a call was made for proposals to consider adding new women's varsity sports. Again, this was done pursuant to a formal process with written guidelines. Attached to the Appendix of Exhibits, marked as Exhibit OOO, is a true and correct copy of the guidelines for the process, including the criteria used to select a new sport. Those criteria include (1) the overall impact on gender equity; (2) interest level; (3) sport sponsorship and available competition; and (4) facilities. Proposals were submitted on behalf of five women's sports: bowling, field hockey, golf, horse polo and rugby. Attached to the Appendix of Exhibits, marked as Exhibit IIII, is a true and correct copy of the proposals submitted (due to the size of the proposal submitted on behalf of horse polo, the supporting documentation has been eliminated). Neither the Plaintiffs nor anyone else submitted a proposal on behalf of women's wrestling.

15. While most sports that are added as varsity teams have a history of having a club sport team on campus before becoming a varsity sport, that is not a prerequisite for a sport to become a varsity sport. In deciding when a sport becomes a varsity sport, UC Davis chooses the sport that is the best fit given the circumstances. Having a well developed club team is a strong factor in showing that a sport may be ready to become a varsity sport, but merely having a club sport does not necessarily make it the best choice, especially considering that there are many sports with well developed club teams that do not have a varsity team. There is also no requirement that a proposal for elevation to varsity status be submitted by a student or by a club representative; others can make such a submission because, as noted above, I seek to make the best choice. I reviewed the proposals submitted by the club teams in 2003, the golf proposal submitted by Associate Athletic Director Bob Bullis, the report prepared by the Committee chaired by Pam Gill-Fisher, and other pertinent material. After reviewing all the pertinent material and receiving the recommendation from the Committee, I agreed with the Committee's recommendation to add women's golf as a new varsity sport starting in the 2005/2006 school year. I thus recommended golf over the other sports proposed for various reasons, including that golf is a championship sport in the Big West Conference. My understanding is that the per Conference rules, UC Davis was required to add sports that are already part of that Conference before adding non-conference sports. Women's golf is offered by 451 universities nationally (which reflects the interest level in the sport); the NCAA has a golf championship in all three divisions; UC Davis received many

inquiries from female high school students who are interested in golf; and the local community had indicated a strong support of golf including use of the El Macero Country Club in Davis. Funding for this additional team came from the intercollegiate athletics budget. In addition, start-up costs and additional funding were provided by supporters of women's golf and alumni donations. Attached to the Appendix of Exhibits, marked as Exhibit PPP, is a true and correct copy of the memorandum I submitted to Vice Chancellor Sakaki setting forth my recommendation and the reasons for it.

16. Women's golf was selected as the new varsity sport. I asked Kathy DeYoung (who had coached women's softball for many years) if she was interested in the position of head coach for the women's golf team. I had known Kathy was very enthusiastic about and skilled in golf. I also knew she was an excellent coach based on her work as a softball coach. She accepted the position, effective in 2004. She spent the 2004/2005 school year developing and recruiting a team, and the team started competition in the 2005/2006 school year.

17. As a general rule, I am more inclined to add a varsity sport that is part of a conference when there are other conference sports to be added. Sports that are part of a conference have a guaranteed number of matches and/or games and it is much easier to schedule contests as that is done by the conference. If the campus were to add a sport that is not part of a conference, it would be incumbent upon the coaches to find sufficient available competition in the geographic area. It has always been my understanding that no athletic conference in the country sponsors women's wrestling. One exception to this general rule was indoor track. When UC Davis formally declared indoor track as a separate sport from outdoor track, it was already essentially operating as a separate sport, including having already found sufficient student-athletes to form a team, sufficient competition, and participation in championships. By declaring men's and women's indoor track as separate sports I was essentially giving official recognition to a team that had already evolved to that status in the late 1990's. I would also be more inclined to recommend the addition of a varsity sport that is either an NCAA championship sport or an NCAA emerging sport over sports that do not fall within those categories. Since the NCAA is the major national governing association in which UC Davis holds membership for all sports and because it has an elaborate set of rules which UC Davis' ICA staff must abide, it is preferable to add sports which are recognized by the NCAA or sports which are NCAA

emerging sports (which suggests to me they may soon become fully recognized NCAA championship sports). I am aware the NCAA does not sponsor women's wrestling, that it is not on the NCAA's list of emerging sports, and, to my understanding, that the NCAA has never sponsored women's wrestling or listed it as an emerging sport. The fact that women's wrestling is not recognized by any conference and not recognized by the NCAA (even as an emerging sport) made me believe that that sport is not sufficiently developed to be ready to become a varsity sport at the Division I or Division II levels during the time periods in which the Plaintiffs attended UC Davis (between the late 1990's and the 2005/2006 season). Since I have been the Athletic Director, I have never added a sport that has not been sponsored by the NCAA or at least identified as an emerging sport.

18. To reduce expenses, UC Davis attempts to limit competitions to schools within a reasonable geographic region. UC Davis' normal competitive region includes schools that are within a reasonable driving distance or a short flight from UC Davis. To my understanding, when the women filed their OCR complaint there were few schools that had women's wrestling varsity teams. I was aware of one in Kentucky and another in Minnesota, both of which were far outside UC Davis' normal competitive region. Later, I became aware that Menlo College in California elevated its club team to varsity a couple of years after Plaintiffs' filed their OCR complaint. On some occasions, UC Davis' teams compete outside the normal geographic region. Such instances typically include attending championships, competing against higher ranked opponents (which will increase the UC Davis' chances to become nationally ranked should they win), or, when necessary, to meet minimum NCAA competition requirements if there is insufficient local competition. While UC Davis teams have traveled to the Eastern part of the country to find competition, I have tried to avoid that kind of long distance travel when possible. My understanding is that a women's wrestling team would have to leave UC Davis' normal geographic region just to find one or two opponents. Since I have been Athletic Director, UC Davis has never sponsored a varsity team with only one or two schools within UC Davis geographic region. At some point in time, I was informed that certain schools in Canada have a women's wrestling team. To my recollection, since I have been the Athletic Director, no UC Davis varsity team has ever scheduled a competition in Canada or against a Canadian team.

I make this declaration of my own personal knowledge and, if called upon to do so, I could and would competently testify about the matters discussed herein.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed this _____ day of ___________ 2008, at ______________, Tennessee.

/s/ Greg Warzecka (Original signature retained by Nancy Sheehan)
Greg Warzecka

# EXHIBIT G

PORTER | SCOTT
A PROFESSIONAL CORPORATION
Nancy J. Sheehan, SBN 109419
George A. Acero, SBN 226709
350 University Avenue, Suite 200
Sacramento, California 95825
(916) 929-1481
(916) 927-3706 (facsimile)

**Attorneys for Defendants:** REGENTS OF THE UNIVERSITY OF CALIFORNIA, LARRY VANDERHOEF (erroneously sued as LAWRENCE VANDERHOEF), GREG WARZECKA, PAM GILL-FISHER, ROBERT FRANKS and LAWRENCE SWANSON

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

AREZOU MANSOURIAN, LAUREN MANCUSO, NANCY NIEN-LI CHIANG, and CHRISTINE WING-SI NG; and all those similarly situated,

Plaintiffs,

vs.

REGENTS OF THE UNIVERSITY OF CALIFORNIA, et al.,

Defendants.

CASE NO. 2:03-CV-02591-FCD-EFB

**DECLARATION OF ROBERT BULLIS IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**Date: March 28, 2008**
**Time: 10:00 a.m.**
**Courtroom: 2**

I, Robert Bullis, declare the following:

1. I am an Associate Athletic Director for the University of California, Davis campus ("UC Davis") and have held this position since October 2000. Prior to being an Associate Athletic Director, I was the Assistant Athletic Director. As the Associate Athletic Director, I am responsible for dealing with the business aspects of UC Davis' Intercollegiate Athletics Program. One of my main responsibilities is formulating the Athletic Department's annual budget. Additionally, I am responsible for supervising several sports programs -- men's and women's golf, men's and women's swimming,

men's and women's water polo, and women's lacrosse. As the Assistant Athletic Director, I performed similar duties including formulating the Athletic Department's annual budget, although I have increased responsibilities in my current position. I have reported directly to the Athletic Director, Greg Warzecka, since August 1995.

2. In or around 2003, the Athletic Department began the process of adding another women's sport. In May 2003, I submitted a proposal to add women's golf as a varsity sport at UC Davis. Attached to the Appendix of Exhibits, marked as Exhibit IIII, is a true and correct copy of the proposal that I submitted for women's golf. To my knowledge, there was no women's golf club sport team at UC Davis in 2003, and the Athletic Department did not receive word that any particular group was going to submit a proposal for woman's golf. However, I and others in the Athletic Department were aware that 451 colleges and Universities had women's golf teams, that most Division I schools had women's golf teams, and that the Big West conference also sponsored women's golf. Since UC Davis was in the process of moving to Division I in 2003, and was going to participate in the Big West conference when it completed its move to Division I, I felt it would be remiss not to consider women's golf as a new varsity sport. Since I was the Associate Athletic Director that supervised men's golf, I prepared and submitted the proposal on behalf of women's golf.

3. In preparing the proposal, I conducted research regarding the possibility of adding women's golf, including looking into the participation rates for women's golf at the collegiate, community college, and high school levels. My research confirmed that a majority of NCAA Division I schools had a women's golf team and that the interest level in women's golf was very high and more than enough to support a varsity women's team. Based on the research I conducted in preparing the report, I felt the heavy participation in Division I schools, the fact that women's golf was sponsored by the Big West Conference, the numerous available competitive opportunities within a reasonable travel distance, the available facilities, and the other factors identified in my proposal, made golf an especially appropriate choice for varsity status.

I make this declaration of my own personal knowledge and, if called upon to do so, I could and would competently testify about the matters discussed herein.

///

///

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed this 9 day of January 2008, at Oakes, California.

Robert E Bullis

Robert Bullis

# EXHIBIT H

PORTER | SCOTT
A PROFESSIONAL CORPORATION
Nancy J. Sheehan, SBN 109419
George A. Acero, SBN 226709
350 University Avenue, Suite 200
Sacramento, California 95825
(916) 929-1481
(916) 927-3706 (facsimile)

**Attorneys for Defendants:** REGENTS OF THE UNIVERSITY OF CALIFORNIA, LARRY VANDERHOEF (erroneously sued as LAWRENCE VANDERHOEF), GREG WARZECKA, PAM GILL-FISHER, ROBERT FRANKS and LAWRENCE SWANSON

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

AREZOU MANSOURIAN, LAUREN MANCUSO, NANCY NIEN-LI CHIANG, and CHRISTINE WING-SI NG; and all those similarly situated,

Plaintiffs,

vs.

REGENTS OF THE UNIVERSITY OF CALIFORNIA, et al.,

Defendants.

CASE NO. 2:03-CV-02591-FCD-EFB

**DECLARATION OF JENNIFER CARDONE IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**Date: March 28, 2008**
**Time: 10:00 a.m.**
**Courtroom: 2**

I, Jennifer Cardone, declare the following:

1. I am the Assistant Athletic Director of Compliance for the University of California, Davis campus. I have held this position since October 2003. From October 2000 to October 2003, I was the Compliance Coordinator. I have been employed with the UC Davis Athletic Department since September 1997. As the Compliance Coordinator, I was responsible for the day-to-day operations of the Compliance Unit for the Intercollegiate Athletics Program. My duties included issuing formal and informal interpretations regarding compliance with NCAA rules, investigating possible NCAA

violations, preparing NCAA squad lists, ensuring compliance with the UC Davis Compliance Manual, administering monthly compliance education meetings, and coordinating the athletic aid program.

2. The NCAA mandates that certain paperwork be completed for all student-athletes who wish to participate in NCAA sanctioned sports, including men's wrestling. In addition, UC Davis requires certain documents to be completed to participate in any varsity sport. The Athletic Academic Advisors provided head coaches with regular updates in the form of written participation lists prior to each scheduled competition informing them if any students are ineligible to practice or compete up to the 2002-2003. After that season, the information was kept in a regularly updated electronic database which is accessible to the coaches 24 hours a day.

3. Students who are members of a varsity team may compete in an open tournament on an unattached basis, meaning they do not wrestle in a UC Davis uniform. If a student-athlete participates unattached, he or she cannot receive coaching during the tournament, nor can the school pay for entry fees, transportation, food, lodging or other expenses.

4. During the 1999/2000 season, I noticed that two of the female wrestlers, Samantha Reinis and Abielle Schwarzberg, had not completed the documentation necessary to be eligible to participate in UCD's Intercollegiate Athletics Program. Attached to the Appendix of Exhibits as Exhibit GGGG, are true and correct copies of 1999/2000 Wrestling team participation lists covering competitions in January and February 2000. UC Davis maintains the participation lists in the ordinary course and scope of its business and it was UC Davis' regular practice during the 1999/2000 school year to prepare written participation lists for the wrestling team prior to each scheduled competition. Schwarzberg was ineligible to practice or compete until she was cleared to practice on 2/2/2000. She was never cleared to compete for the 1990/2000 season. Reinis was ineligible to practice or compete as of February 22, 2000, and remained ineligible for the entire season due to non-compliance with the physical requirement. After I noticed this issue I contacted Associate Athletic Director Pam Gill-Fisher and informed her that the female wrestlers were practicing without completing all requirements necessary to be eligible to participate.

5. The head coach of each varsity team is required to submit a schedule of the team's competition at the outset of the season. I have never received a schedule indicating the existence of a

women's wrestling team at UC Davis or a schedule identifying any competitions created solely for women wrestlers.

6. UC Davis is a selective admissions campus, meaning that students who meet the requisite grade point average and SAT score requirements for entry into the University of California generally are not automatically eligible for admission at the Davis campus. Admissions personnel choose only the most selective of those applicants who are minimally eligible for admission under UC standards. The head coach of a varsity team may sponsor a student for admission, meaning that the student will be admitted to UC Davis even if she or he is not selective, so long as the student meets the minimum qualifications for admission.

7. Attached to the Appendix of Exhibits as Exhibit CCC is a true and correct copy of the documents showing the allocations of grant-in-aid money that Mike Burch made to wrestlers for the years 1998/99, 1999/00 and 2000/01. Attached to the Appendix of Exhibits as Exhibit DDD is a true and correct copy of an e-mail sent to me on June 14, 2001 by Coach Burch in which he attempted to award grant-in-aid money to three women wrestlers. This e-mail was the first time Michael Burch ever requested a grant-in-aid for a women wrestler. I notified Pam Gill-Fisher and Greg Warzecka about the grant-in-aid request because I was aware that Burch's contract had not been renewed and wanted direction as to whether the distribution of the financial should be left to Burch or the incoming coach.

8. UC Davis has an intercollegiate athletics Compliance Manual which sets forth campus and NCAA rules and requirements pertaining to varsity athletics. All coaches are provided with copies of the Compliance Manual and are expected to abide by the rules and regulations contained in it. Attached to the Appendix of Exhibits, as Exhibit PPPP, is a true and correct copy of the cover page of the 2000/01 Compliance Manual, and the page in that manual entitled "Requirements for Clearance of Student-Athletes to Practice." That page sets forth the requirement that in order to practice with a varsity team, a student-athlete must be on the roster for that team. All students who participate in any manner in intercollegiate athletics at UC Davis (including practice and/or competition) must complete certain required paperwork such as the NCAA Student-Athlete Statement and Drug-Testing Consent Form, and the U.C. Davis required Academic Plan Form. If they fail to complete the mandated documentation, they are not eligible to participate until the paperwork is submitted.

I make this declaration of my own personal knowledge and, if called upon to do so, I could and would competently testify about the matters discussed herein.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed this 10th day of January 2008, at Davis, California.

Jennifer Cardone