UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

AREZOU MANSOURIAN; LAUREN
MANCUSO; NANCY NIEN-LI CHIANG;
CHRISTINE WING-SI NG; and all
those similarly situated,

        Plaintiffs,

    v.

BOARD OF REGENTS OF THE
UNIVERSITY OF CALIFORNIA AT
DAVIS; LAWRENCE VANDERHOEF;
GREG WARZECKA; PAM GILL-
FISHER; ROBERT FRANKS; and
LAWRENCE SWANSON,

        Defendants.

NO. CIV. S 03-2591 FCD EFB

MEMORANDUM AND ORDER

----oo0oo----

This matter is before the court on a motion for summary judgment, pursuant to Federal Rule of Civil Procedure 56, filed by defendants Board of Regents of the University of California, Davis, Lawrence Vanderhoef ("Vanderhoef"), Greg Warzecka ("Warzecka"), Pam Gill-Fisher ("Gill-Fisher"), and Lawrence Swanson ("Swanson") (collectively "defendants" or "UCD"). Plaintiffs Arezou Mansourian ("Mansourian"), Lauren Mancuso

1

("Mancuso"), and Christine Wing-Si Ng ("Ng") (collectively
"plaintiffs")[1] oppose the motion.  For the reasons set forth
below,[2] defendants' motion is GRANTED.

### BACKGROUND[3]

In the 1990s, varsity wrestling at UCD included both women
and men.  (DRAF ¶ 53.)  Plaintiffs Mansourian, Mancuso, and Ng
are former female wrestlers at UCD.  (DRAF ¶ 3.)  In 2000, UCD
ordered that all women be removed from the wrestling program.
(DRAF ¶ 4.)

Subsequently, plaintiffs filed a number of complaints with
the U.S. Department of Education's ("DOE") Office for Civil
Rights ("OCR").  Plaintiff Ng filed the first complaint on April

---

[1]   Plaintiff Nancy Nien-Li Chiang voluntarily dismissed
all claims in this action on June 12, 2007.  (See Mem. & Order
(Docket #195), filed July 12, 2007.)

[2]   Because oral argument will not be of material
assistance, the court orders these matters submitted on the
briefs.  E.D. Cal. L.R. 78-230(h).

[3]   Unless otherwise noted, the facts contained herein are
undisputed.  (See Pls.' Response to Defs.' Stmt. of Undisputed
Facts ("PRUF"), filed Mar. 6, 2008.)  Where the facts are
disputed, the court recounts plaintiffs' version of the facts.
(Defs.' Response to Pls.' Stmt. of Additional Disputed Facts
("DRAF"), filed Mar. 31, 2008.)

The court notes that both parties filed motions to strike
and numerous objections, objecting to various aspects of evidence
submitted in support of and in opposition to the motion for
summary judgment.  (See Pls.' Mot. to Strike (Docket #320), filed
Mar. 6, 2008; Pls.' Opp'n to Judicial Notice (Docket #323), filed
Mar. 6, 2008; Pls.' Objections to Evidence (Docket #338), filed
Mar. 6, 2008; Defs.' Objections to Evidence (Docket #344), filed
Mar. 31, 2008; Defs.' Mot. to Strike (Docket #348), filed Mar.
31, 2008; Pls.' Objections to Evidence (Docket #366), filed Apr.
17, 2008.)   Except where otherwise noted herein, the court finds
the parties' objections irrelevant to the motion, as the court
does not rely upon the subject evidence in rendering its
decision.  As such, the parties' motions to strike are DENIED and
the objections of both parties are OVERRULED as moot.

2

25, 2001, alleging "[t]he Athletic Administration will not allow me to wrestle, nor any other female, and I strongly believe it is due to my sex." (PRUF ¶ 93; Defs.' Ex. GGG, filed Jan. 11, 2008, at W46.)[4]  Plaintiff Ng filed a second supplemental complaint with the OCR on May 14, 2001, which included allegations that UCD "recruits 'student-athletes' for its wrestling program but prohibits such recruitment of females," "prohibits females from participating in regularly scheduled competition," "denies women wrestlers the use of the 'intercollegiate training room,'" and "denies women wrestlers the services of its athletic trainers." (PRUF ¶ 95; Defs.' Ex. HHH, filed Jan. 11, 2008, ¶¶ 1-4.)  On June 26, 2001, plaintiff Ng submitted a third supplemental complaint on behalf of herself and plaintiffs Mansourian and Mancuso.  (PRUF ¶ 96.)  This complaint alleged the "UC-Davis athletic department granted the male members of the wrestling team the scholarships awarded by wrestling coach, Mike Burch in June 2001, but not to the females." (Defs.' Ex. KKK, filed Jan. 11, 2008, at W419.)  Finally, plaintiff Mansourian filed a fourth supplemental complaint on August 13, 2001, alleging the "firing [of Mike Burch] was in retaliation against him and us, because he fought to keep us on UCD's intercollegiate wrestling team."

---

[4]    Plaintiffs object to defendants' Exhibit GGG as improperly authenticated and hearsay. (See Pls.' Objections to Evidence at 39:6-8 (Docket # 338), filed Mar. 6, 2008.)  However, because plaintiffs also submitted this evidence, (Pls.' Ex. A:80 (Docket #330-2), filed Mar. 6, 2008), it is self-authenticating, Orr v. Bank of Am., 285 F.3d 764, 777 n.20 (9th Cir. 2002); Alexander Dawson, Inc. v. N.L.R.B., 586 F.2d 1300, 1302 (9th Cir. 1978).  Moreover, the court considers the evidence not for the truth of the matters asserted, but rather for the effect they had on UCD (i.e. notice). United States v. Payne, 944 F.2d 1458, 1472 (9th Cir. 1991).  Plaintiffs' objection is overruled.

3

1   (Defs.' Ex. LLL, filed Jan. 11, 2008, at W417.)

2       Following an investigation by the OCR, UCD posed and the OCR

3   accepted a voluntary resolution plan.  (DRAF ¶ 82.)  The plan

4   required UCD to permit female athletes to try out for the

5   wrestling team.  (DRAF ¶ 83.)  Plaintiffs Ng and Mancuso

6   subsequently competed for a spot on the wrestling team, but

7   neither plaintiff was given a spot on the team.  (DRAF ¶ 93.)

8       On December 18, 2003, plaintiffs filed the instant action on

9   behalf of themselves and a putative class, asserting six claims

10  for relief: (1) violation of Title IX based on unequal

11  opportunities; (2) violation of Title IX based on unequal

12  financial assistance; (3) retaliation in violation of Title IX;

13  (4) violation of 42 U.S.C. § 1983; (5) violation of the

14  California Unruh Civil Rights Act; and (6) violation of public

15  policy.  Defendant filed a motion to dismiss pursuant to Federal

16  Rule of Civil Procedure 12(b)(6) on March 5, 2004.  (Defs.' Mot.

17  to Dismiss (Docket #13-15), filed Mar. 5, 2004.)  The court

18  denied the motion on May 6, 2004.  (Mem. & Order (Docket #25),

19  filed May 6, 2004).

20      Unfortunately, both defendants' and plaintiffs' counsel

21  suffered illnesses throughout the course of the litigation.  As a

22  result, both parties stipulated to extend deadlines and to stay

23  proceedings.  In August 2006, plaintiffs obtained new counsel.

24  (Notice of Appearance (Docket #134), filed Aug. 18, 2006.)  The

25  parties submitted a joint status report on January 19, 2007, and

26  active litigation resumed.  (Joint Status Report (Docket #154),

27  filed Jan. 19, 2007.)

28  /////

4

On February 2, 2007, plaintiffs' filed a motion to amend the complaint to add new plaintiffs and allegations. (Pls.' Mot. to Amend (Docket #158), filed Feb. 2, 2007.) The court denied the motion on March 20, 2007.[5] (Mem. & Order (Docket #175), filed Mar. 20, 2007.) The parties thereafter stipulated to dismiss the class claims. (Mem. & Order (Docket #195), filed June 12, 2007.)

On June 5, 2007, defendants filed a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). (Defs.' Mot. for J. on Pleadings (Docket #188), filed June 5, 2007.) The court granted the motion for all claims, except plaintiffs' claim for ineffective accommodation. (Mem. & Order (Docket #226), filed Oct. 18, 2007.) Defendants' filed the instant motion on January 11, 2008. (Defs.' Mot. for Summ. J. (Docket #280), filed Jan. 11, 2008.)

**STANDARD**

The Federal Rules of Civil Procedure provide for summary judgment where "the pleading, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact. Fed. R. Civ. Proc. 56(c); see <u>California v. Campbell</u>, 138 F.3d 772, 780 (9th Cir. 1998). The evidence must be viewed in the light most favorable to the nonmoving party.

---

[5] Specifically, the court denied plaintiffs' request to amend the complaint to assert claims for denied opportunities in women's rugby and field hockey. The court found that "[w]hile the plaintiffs may has sought to bring challenges on behalf of all women athletes at UC Davis . . . [t]he factual allegations in the original complaint related only to the opportunities available for women to participate in the UC Davis wrestling program and plaintiffs alleged inability to receive the benefits of being a varsity wrestler." (Mem. & Order at 11:13-20 (Docket #175), filed Mar. 20, 2007.)

1  See Lopez v. Smith, 203 F.3d 1122, 1131 (9th Cir. 2000) (en
2  banc).

3      The moving party bears the initial burden of demonstrating
4  the absence of a genuine issue of fact.  See Celotex Corp. v.
5  Catrett, 477 U.S. 317, 325 (1986).  If the moving party fails to
6  meet this burden, "the nonmoving party has no obligation to
7  produce anything, even if the nonmoving party would have the
8  ultimate burden of persuasion at trial.  Nissan Fire & Marine
9  Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102-03 (9th Cir. 2000).
10 However, if the nonmoving party has the burden of proof at trial,
11 the moving party only needs to show "that there is an absence of
12 evidence to support the nonmoving party's case."  Celotex Corp.,
13 477 U.S. at 325.

14     Once the moving party has met its burden of proof, the
15 nonmoving party must produce evidence on which a reasonable trier
16 of fact could find in its favor viewing the record as a whole in
17 light of the evidentiary burden the law places on that party.
18 See Triton Energy Corp. v. Square D Co., 68 F.3d 1216, 1221 (9th
19 Cir. 1995).  The nonmoving party cannot simply rest on its
20 allegations without any significant probative evidence tending to
21 support the complaint.  See Nissan Fire & Marine, 210 F.3d at
22 1107.  Instead, through admissible evidence the nonmoving party
23 "must set for specific facts showing that there is a genuine
24 issue for trial."  Fed. R. Civ. Proc. 56(e).

**ANALYSIS**

26     Defendants assert that plaintiffs' ineffective accommodation
27 claim must fail because plaintiffs have not alleged they gave
28 defendant notice and an opportunity to remedy any purported

6

systemic non-compliance with Title IX.  Defendants' argument
presents an issue of first impression in this jurisdiction.  The
court concludes that money damages cannot be awarded unless a
plaintiff has given notice of and an opportunity to rectify the
specific violation alleged by a Title IX plaintiff.  The court
also concludes that plaintiffs have failed to demonstrate a
triable issue of fact regarding whether such notice and
opportunity were given in this case.

**A.    Notice and Opportunity to Cure in Title IX Cases**

Title IX prohibits sex discrimination in education programs,
including athletic programs, at institutions receiving federal
funding.  20 U.S.C. § 1861 (West 2008).  Although the statute is
silent on the question of private remedies, the Supreme Court has
held that Title IX provides individuals with a private cause of
action.  <u>Cannon v. Univ. of Chi.</u>, 441 U.S. 677, 717 (1979).
However, because a private cause of action is judicially implied,
a court must "shape a sensible remedial scheme that best comports
with the statute."  <u>Id.</u>

The express system of enforcement in Title IX provides a
robust administrative remedial scheme.  <u>Bruneau v. S. Kortright
Ctr. Sch. Dist.</u>, 163 F.3d 749, 756 (2d Cir. 1998).  Under the
enforcement scheme, injured persons can file a complaint with the
DOE, which is required to investigate the allegations.  34 C.F.R.
§ 100.7(b)-(c); <u>Bruneau</u>, 163 F.3d at 756.  The DOE is also
permitted to conduct periodic compliance reviews without a
complaint.  34 C.F.R. § 100.7(a).  If the DOE concludes based on
its investigation of a complaint or a periodic review that an
institution has violated Title IX, it may terminate federal

7

1  funding to the institution or institute other proceedings

2  authorized by law.  20 U.S.C. § 1682.  Significantly, the DOE may

3  not initiate any enforcement proceedings until it "has advised

4  the appropriate person or persons of the failure to comply with

5  the requirement and has determined that compliance cannot be

6  secured by voluntary means."  Id.  Similarly, the administrative

7  regulations require resolution of compliance issues "by informal

8  means wherever possible," id. § 100.7(d)(1), and prohibit

9  enforcement proceedings absent a showing the aid recipient "has

10  been notified of its failure to comply and of the action to be

11  taken to effect compliance," id. § 100.8(d).[6]  Thus, both the

12  statute and its implementing regulations condition enforcement

13  proceedings on notice and an opportunity to cure non-compliance.

14      "A central purpose of requiring notice of the violation . .

15  . and an opportunity for voluntary compliance before

16  administrative enforcement proceedings can commence is to avoid

17  diverting education funding from beneficial uses where a

18  recipient was unaware of discrimination in its programs and is

19  willing to institute prompt corrective measures."  Gebser v. Lago

20  Vista Ind. Sch. Dist., 524 U.S. 274, 289 (1998).  When an

21  institution's athletic program is out of compliance with Title

22  IX, knowledge of the violation cannot be imputed to the

23  institution simply because it oversees the program.  Grandson v.

24  Univ. of Minn., 272 F.3d 568, 575 (8th Cir. 2001).  Even if

25  knowledge of failure to provide full and effective accommodation

26

27      [6]   The court notes that the cited regulations pertain to
Title VI of the Civil Rights Act of 1964.  However, the
implementing regulations of Title IX expressly incorporate by

28  reference these provisions.  See 34 C.F.R. § 106.71.

of interest could be imputed, an institution may otherwise be in compliance with Title IX because (1) there is substantial statistical proportionality between athletic participation and enrollment rates of an underrepresented sex; or (2) the institution has a continuing practice of program expansion to accommodate an underrepresented sex. <u>Neal v. Bd. of Trustees of Cal. St. Univs.</u>, 198 F.3d 763, 767-68 (9th Cir. 1999) (listing three ways in which an institution may comply with Title IX: (1) full and effective accommodation interest; (2) substantial statistical proportionality between participation and enrollment; or (3) continuing practice of program expansion).  Thus, failure to provide notice prior to filing suit may result in the type of harm the notice requirement is intended to prevent, that is, a court order diverting education funds where an institution is unaware of the violation and willing to take corrective measures.

Moreover, "[i]t would be unsound . . . for a statute's *express* system of enforcement to require notice to the recipient and an opportunity to come into voluntary compliance while a judicially *implied* system of enforcement permits substantial liability without regard to the recipient's knowledge or its corrective actions upon receiving notice." <u>Gebser</u>, 524 U.S. at 289-90 (emphasis in original).  This is particularly true given that Congress has conditioned the statute's most severe sanction -- termination of federal funding -- upon notice and an opportunity for voluntary compliance.  20 U.S.C. § 1682; 34 C.F.R. §§ 100.7(d)(1), 100.8(d).  The court does not find that Congress intended to create an implied enforcement scheme that may impose greater liability, in the form of monetary damages

9

potentially exceeding the level of federal funding, absent
comparable conditions.  <u>Gebser</u>, 524 U.S. at 290.  "Because the
express remedial scheme under Title IX is predicated upon notice
to an 'appropriate person' and an opportunity to rectify any
violation . . . [the court] conclude[s], in absence of further
direction from Congress, that the implied damages remedy should
be fashioned along the same lines."  <u>Id.</u>

In similar circumstances, the Eighth Circuit has also held
that notice and an opportunity to cure alleged violations of
Title IX are required to sustain a private damages action.
<u>Grandson</u>, 272 F.3d at 575-76.  In <u>Grandson</u>, female student
athletes filed actions for monetary relief claiming a funding
disparity between the men's and women's soccer teams and
ineffective accommodation.  <u>Id.</u>  Relying on <u>Gebser</u>, the Eighth
Circuit upheld the district court's grant of summary judgment to
the University of Minnesota because "[t]here was no allegation of
prior notice of [plaintiffs'] complaints to appropriate UMD
officials, no allegation of deliberate indifference by such
officials, and no allegation [plaintiffs] afforded UMD a
reasonable opportunity to rectify the alleged violations."  <u>Id.</u>
Because defendants in this case also seek summary judgment on the
basis plaintiffs failed to provide notice and an opportunity to
cure an ineffective accommodation claim, <u>Grandson</u> provides
persuasive support for the court's conclusion that notice and an
opportunity to cure are required to sustain a private damages
action.

In asserting that notice is not required because plaintiffs
are asserting a claim for ineffective accommodation, plaintiffs

10

argue the court's reliance on Gebser is misplaced.  Specifically, plaintiffs contend the Supreme Court's holding in Gebser is limited to cases of sexual harassment because, in such cases, the institution may not be aware of the alleged violation. Plaintiffs contend an institution necessarily has knowledge of an ineffective accommodation violation because it oversees the athletic program.  Thus, plaintiffs assert they may seek damages without giving notice to the institution and an opportunity to cure.  However, the Gebser Court's reasoning applies equally to both sexual harassment and ineffective accommodation claims.  The Supreme Court in Gebser was concerned about creating a judicially implied remedial system that was broader than the express enforcement scheme created by Congress, particularly where damages may exceed a recipient's level of federal funding.  524 U.S. at 289-90.  The Court therefore required that the remedial scheme for private plaintiffs mirror the remedial scheme mandated for federal enforcement agencies.  Id.  If the court adopted plaintiffs' position, it would create an implied enforcement scheme with the potential to impose greater liability on an institution without conditions comparable to the express remedial scheme provided by Congress.  See id.  The Supreme Court's analysis in Gebser is therefore equally applicable to this case.

Moreover, there is nothing in the statute or its implementing regulations to support the argument that Congress intended a different remedial scheme to apply based on the nature of the Title IX claim.  Section 902 broadly advises that no remedial actions shall be taken by a federal enforcement agency until it "has advised the appropriate person or persons of the

11

failure to comply with the requirement and has determined that

compliance cannot be secured by voluntary means."  20 U.S.C. §

1682.  Similarly, the regulations instruct agencies to resolve

matters "by informal means wherever possible" and abstain from

taking action until "the responsible Department official has

determined that compliance cannot be secured by voluntary means

[and] the recipient or other person has been notified of its

failure to comply and of the action to be taken to effect

compliance."  34 C.F.R. §§ 100.7(d)(1), 100.8(d).  Notably absent

from these provisions is language limiting their application to

sexual harassment claims.  The court will not infer an intent on

the part of Congress to create an implied scheme differentiating

between sexual harassment and ineffective accommodation claims

where the express scheme contains no such distinction.

Plaintiffs argue that under Davis v. Monroe County Bd. of

Educ., 526 U.S. 629, 642 (1999), and Jackson v. Birmingham Bd. of

Educ., 544 U.S. 167, 174 (2005), notice is not required where an

institution intentionally violates Title IX.  However, Davis and

Jackson implicitly support the conclusion that notice and an

opportunity to cure specific violations are prerequisites for

private damages claims under Title IX.  In Davis, the Supreme

Court held that an institution can be liable for student-to-

student sexual harassment where it exhibited "deliberate

indifference to known acts of harassment."  526 U.S. at 643

(emphasis added).  In that case, the complaint alleged that the

defendants had knowledge of the alleged violation because

plaintiff or her mother reported each of the incidents to the

classroom teacher, another classroom teacher, and the school

12

principle over several months. Id. at 634-35.  Further, the
institution had an opportunity to cure the violation over several
months after such notice was given, but it deliberately failed to
take action.  Id. at 635, 644.  Rather, it was only after more
than three months of reported harassment, that plaintiff was
allowed to change her classroom seat so that she no longer sat
next to petitioner.  As such, the Supreme Court's holding in
Davis supports the holding that notice and an opportunity to cure
is required.

    Similarly, in Jackson, the Court held an institution is
liable for retaliation against a coach that complains of sex
discrimination.  544 U.S. at 183.  In that case, the complaint
alleged that the defendant had knowledge of the alleged violation
because the plaintiff basketball coach complained to his
supervisors about the unequal treatment of the girls' basketball
team at the institution.  Id. at 171.  The plaintiff's complaints
went unanswered.  Id. at 171.  Subsequently, instead of
addressing the complaints or curing the alleged violations, the
defendant allegedly retaliated against the plaintiff by giving
him negative work evaluation and , ultimately, removing him from
his position as the girls' basketball coach.  Id. at 172.  Thus,
in Jackson, the defendant had an opportunity to cure the alleged
violations, but chose to take retaliatory action instead.
Therefore, like Davis, the Court's holding in Jackson supports,
rather than refutes, the court's holding that notice and an
opportunity to cure are required in Title IX cases.

    Finally, plaintiffs contend that any reliance on Grandson is
misplaced because "it stands alone in applying Gebser to a claim

13

of intentional discrimination." (Pls.' Opp'n to Defs.' Mot. for Summ. J. (Docket #342), filed Mar. 6, 2008, at 37).  However, plaintiffs fail to recognize that there are less than two dozen reported Title IX cases, and Grandson is the only reported case to address the specific issue of notice and opportunity to cure presented by this case.  While Grandson is not controlling on this court, it is persuasive authority for addressing whether notice and an opportunity to rectify specific violations of Title IX are required to sustain a private damages action.

**B.   Notice and Opportunity to Cure in this Case**

Having concluded notice and an opportunity to cure specific violations alleged by Title IX plaintiffs are required to sustain a private damages action, the court considers whether plaintiffs have raised a triable issue of fact as to notice and opportunity to cure in this case.  Alleged violations of Title IX are generally divided into two categories of claims: unequal treatment claims and ineffective accommodation claims.  Unequal treatment claims focus on, *inter alia*, inequalities of scholarships, coaches' salaries, facilities, training, and travel between male and female athletic programs.  See 34 C.F.R. § 106.37(c), 106.41(c)(2)-(10); Pederson v. La. State Univ., 213 F.3d 858, 865 n.4 (5th Cir. 2000).  Ineffective accommodation claims determine whether equal athletic opportunities for members of both sexes are available and effectively accommodate the interest and abilities of members of both sexes.  See 34 C.F.R. § 106.41(c)(1); Pederson, 213 F.3d at 865 n.4.

The undisputed evidence establishes that plaintiffs did not provide defendants with notice and an opportunity to cure a

violation of Title IX for ineffective accommodation.  Plaintiffs'

complaints filed with the OCR provide no indication of a claim

for a failure to provide sufficient athletic opportunities for

women.  Plaintiff Ng's complaints allege unequal treatment in

recruiting, scholarships, competitive schedules, facilities, and

services at UCD.  (Defs.' Ex. HHH ¶¶ 1-4;Defs.' Ex. KKK at W419.)

Similarly, plaintiff Mansourian's complaint alleges "ongoing

sexual discrimination" and asks for "equal rights, as women, so

that we can again wrestle on UCD's intercollegiate wrestling

team."  (Defs.' Ex. LLL at W417.)  Thus, the complaints do not

indicate that plaintiffs were challenging UCD's entire athletic

program.[7]  Rather, the complaints allege specific acts of unequal

treatment with respect to women's wrestling.[8]  Plaintiffs

[7]     Plaintiffs argue that UCD was given adequate notice of
an ineffective accommodation claim with respect to the wrestling
team and, thereby, was given notice of a challenge to the
athletic program.  Assuming *arguendo* a challenge to a single team
would notify an institution of a challenge to its entire athletic
program, plaintiffs' proffered evidence does not support their
assertion.  Plaintiffs' complaints to defendants and the OCR do
not set forth an ineffective accommodation claim with respect to
either wrestling or UCD's entire athletic program.  Rather,
plaintiffs' complaints allege unequal treatment of female
wrestlers.

[8]     In its Memorandum and Order addressing defendants'
motion for judgment on the pleadings, the court construed that
plaintiffs' allegation that UCD violated Title IX by "choosing to
make fewer athletic opportunities to female students than to male
students" as sufficient to state a claim for ineffective
accommodation.  (Mem. & Order at 23:2-7 (Docket #226), filed Oct.
18, 2007 (citing Pls.' Compl. ¶ 129 (Docket #1), filed Dec. 18,
2007.))  However, it was not clear until oral argument on
defendants' motion that plaintiffs were pressing such a claim.
As such, in keeping with the spirit of liberal notice pleading,
the court allowed the parties to submit supplemental briefing on
this issue due to the failure to incorporate such arguments with
any type of specificity or particularity in the moving papers.
In this supplemental briefing, defendants argued they were not
aware plaintiffs were pressing this theory of liability.  (See
Defs.' Reply to Pls.' Supplement Br. at 1:12-18 (Docket #212),

complaints therefore fail to raise a triable issue of fact as to whether defendants received notice and an opportunity to cure an ineffective accommodation claim.

Plaintiffs argue they are not required to file a complaint with the OCR to satisfy notice and opportunity to cure.  The court agrees.  Indeed, plaintiffs could have satisfied these requirements in any number of ways.  However, the only evidence of potential notice, beyond the complaints filed with the OCR, is a meeting that occurred in January 2001 between defendant Warzecka and plaintiffs Mansourian and Ng.  (DRAF ¶ 70.)  The deposition testimony of Mansourian and Ng indicates the parties discussed why women were removed from the wrestling team. Specifically, Mansourian and Ng assert the parties discussed that women wrestlers were "way too much liability for the UC," that female wrestlers could not waive liability, that the NCAA does not support mixed wrestling teams, and that women interested in wrestling needed to "do the club sports." (See Pls.' Ex. B:33 at 189-199 (Docket #334), filed Mar. 6, 2008; Pls.' Ex. B:38 at 173-76 (Docket #335), filed Mar. 6, 2008.)  Thus, the evidence fails to establish plaintiffs notified defendants of a complaint for ineffective accommodation during the meeting with Warzecka. Accordingly, plaintiffs have not raised a triable issue of fact as to whether they otherwise provided UCD notice and an opportunity to cure.

Plaintiffs also assert that requiring notice of specific violations of Title IX imposes an unprecedented burden on

filed Aug. 17, 2007.)

16

plaintiffs to allege violations with a high degree of specificity in OCR complaints.   Plaintiffs contend that requiring potential litigants to distinguish between an unequal treatment claim and an ineffective accommodation claim is a burden not contemplated by the statute or even required by the pleading standard set forth in the Federal Rules of Civil Procedure.   Contrary to plaintiffs' assertion, the court's holding does not require Title IX plaintiffs to plead their allegations with precision or specificity.   However, the allegations must provide some indication of the basis for the institution's non-compliance so that an institution may attempt to remedy the situation voluntarily.   The evidence simply fails to establish that plaintiffs gave defendants notice of a Title IX claim for failing to provide enough athletic opportunities to female athletes.

   In the alternative, plaintiffs contend that even if they did not provide notice of an ineffective accommodation claim, defendants should have been on notice that plaintiffs were making such a claim because the OCR actively investigated program-wide non-compliance with Title IX as a result of plaintiffs' complaints.[9]   However, the evidence proffered by plaintiffs fails to support this assertion.   Moreover, even if the OCR conducted

---

[9]      Plaintiffs implicitly argue that if defendants knew of the alleged ineffective accommodation violation, the absence of any complaints directed at this specific type of violation by plaintiffs is immaterial.   The court notes that this argument neglects the requirement that defendants be given an opportunity to cure the violations alleged by an aggrieved party.   However, because, as set forth *infra*, plaintiffs have not presented evidence that the OCR actively investigated a complaint of program-wide violations, that defendants were aware the OCR was conducting such an investigation, or that defendants were informed by the OCR that there were any such violations, the court need not reach the merits of this argument.

an investigation into alleged program-wide violations, plaintiffs
fail to present evidence that defendants were on notice of any
program-wide violation as a result.

First, plaintiffs cite to the deposition testimony of
Swanson, which they allege demonstrates that "the majority of the
[OCR investigation] was spent on the issue of women's
opportunities." (Pls.' Ex. B:55 at 104:19-20 (Docket #336),
filed Mar. 6, 2008.)  The deposition testimony does not support
this assertion.  Swanson's testimony establishes that the OCR
investigated the issue of women's athletic opportunities *in
wrestling*:

> I think that the meeting was much more directed to the
> opportunity for women on the team, what had taken place
> in the past, what we were willing to do from this point
> forward.  Concerns that had we really discriminated
> against these women, had we taken away the opportunity
> to be involved as they had been in the past.

(Pls.' Ex. B:55 at 104:1-8.)  Swanson's testimony does not
establish that the OCR investigated the athletic program's
compliance with Title IX.  Therefore, plaintiffs have not raised
a triable issue of fact as to notice and opportunity to cure
based on this testimony.

Second, plaintiffs cite a letter from a UCD official in
support of their contention that the OCR investigated program-
wide compliance with Title IX.  The letter opens, "[UCD]
welcome[s] the opportunity to have the [OCR] review [UCD's]
athletic gender equity compliance with Title IX." (Pls.' Ex.
A:35 (Docket #335), filed Mar. 6, 2008.)  This statement is
merely an introductory paragraph containing a basic salutation to
the OCR, not a concession that UCD was aware of a claim for

18

ineffective accommodation.  In fact, the very next paragraph of the letter begins, "I would like to take this opportunity to respond to the sexual discrimination complaint filed by three UC Davis female students who participate with our NCAA Division I men's wrestling team."  (Pls. Ex. A:35 ¶ 2.)  Thus, the letter indicates the OCR investigated discrete acts of discrimination with respect to women's wrestling.  Plaintiffs therefore have not raised a genuine issue of material fact on the basis of this letter.

Third, plaintiffs argue the deposition testimony of Warzecka establishes that the OCR investigated the amount of athletic opportunities UCD provided all female athletes.  In his deposition, Warzecka was asked whether the OCR investigated all Title IX issues at UCD or merely the issues surrounding women's wrestling.  (Pls.' Ex. B:65 at 368:24-369:1 (Docket #337), filed Mar. 6, 2008.)  Warzecka responded:

> [The OCR] responded to a complaint that the four women made.  And did their--did they take latitude to look at other things outside of that complaint?  Yes, they did. . . .  And I feel a lot of the questions they asked helped them provide background of how we do things at UC Davis and how we handle club sports.

(Pls.' Ex. B:65 at 369:2-12.)  While Warzecka's response indicates the OCR asked questions about matters outside the complaints, it does not establish the OCR investigated program-wide compliance with Title IX.  Rather, Warzecka indicates he understood such questions to provide necessary background information.  Because Warzecka's testimony does not establish the OCR investigated program-wide compliance or that UCD understood the OCR was conducting such an investigation, plaintiffs have

19

1  failed to raise a triable issue of fact with respect to actual

2  notice and opportunity to cure.

3      Plaintiffs' assertion that the OCR investigated program-wide

4  compliance also fails because the voluntary resolution plan

5  adopted by the OCR following its investigation made no findings

6  with respect to program-wide violations.  Instead, the plan dealt

7  exclusively with women's wrestling.  Specifically, the plan

8  required UCD, *inter alia*, to encourage all men and women "to

9  compete for a position on the wrestling team," to "recruit the

10  best qualified wrestlers, irrespective of gender," to allow

11  members of the club wrestling team to practice concurrently with

12  members of the varsity wrestling team, to provide the club

13  wrestling team medical insurance service and use of facilities

14  equal to other university club sports, and to encourage members

15  of the club wrestling team to participate in the open wrestling

16  tournament sponsored by UCD.  (Pls.' Ex. A:34 at 2 (Docket #327-

17  5), filed Mar. 6, 2008.)[10]  The OCR found that by taking these

18  steps, a "rapid resolution of the issues" could be reached.

19  (Pls.' Ex. A:34 at 1.)  The plan's limited subject matter and

20  finding that issues could be resolved through action directed

21  solely at the wrestling team indicates that no investigation was

22  taken into UCD's program-wide compliance.  At the very least, it

23  indicates that UCD was not on notice of any program-wide

24  violation as a result of the OCR's investigation.  Thus, there is

25

26      [10]    Plaintiffs object to defendants' request for judicial
notice of the cited evidence.  (<u>See</u> Pls.' Opp'n to Judicial
27  Notice (Docket #323), filed Mar. 6, 2008.)  The court overrules
this objection as plaintiffs also submitted the very evidence to
28  which it objects.

20

no evidence to support the assertion that the OCR investigated anything other than the unequal treatment of female wrestlers at UCD.

Finally, plaintiffs contend that UCD was on notice of an ineffective accommodation claim due to the public outcry in response to removal of females from the wrestling team.  However, "[a] vigorous public debate on these issues does not demonstrate that [the university] knew of systemic non-compliance."  Grandson, 272 F.3d at 575.  The evidence submitted by plaintiffs demonstrates that the public outcry in this case was in response to the allegedly gender biased and discriminatory removal of women from the wrestling team.  None of the evidence relating to the public's response contains allegations or statements relating to program-wide compliance or the failure of UCD to sufficiently provide athletic opportunities to women.[11]  Accordingly, the cited evidence is not sufficient to raise a triable issue of fact as to notice and opportunity to cure.

The court is mindful that Congress enacted Title IX to prevent the use of federal resources to support sex-based discrimination.  20 U.S.C. § 1681; Cannon, 441 U.S. at 704.  There is no question that student athletes are discriminated

---

[11]    Defendants' object to various letters, flyers, newspaper articles, and other evidence of the public's outcry following the removal of women from the wrestling team as hearsay.  (See Defs.' Objections to Evidence ¶¶ 1-10 (Docket #344), filed Mar. 31, 2008.)  However, the court does not consider the subject evidence for the truth of the matter asserted, but rather for the effect it had on UCD (i.e. notice).  Payne, 944 F.2d at 1472.  Moreover, consideration of this evidence does not prejudice defendants as it is not sufficient to raise a triable issue of fact as to notice.  Defendants' objection is overruled.

against and suffer harm when subject to unequal treatment or
ineffective accommodation on the basis of their sex.  However,
the limited issue presented by the facts of this case on this
motion is whether an institution may be held liable for damages
for a claim of ineffective accommodation, absent a showing of
notice by plaintiffs and an opportunity for defendants to rectify
the alleged non-compliance.  Given Title IX's express enforcement
scheme, the Supreme Court's analysis in Gebser, and the Eighth
Circuit's opinion in Grandson, the court concludes a suit for
private damages cannot be sustained until notice and opportunity
to cure are given to an institution allegedly out of compliance
with Title IX.  Plaintiffs have failed to demonstrate a triable
issue of fact regarding whether such notice and opportunity were
given in this case.

**CONCLUSION**

For the foregoing reasons, defendant's motion for summary
judgment is GRANTED.  The Clerk is directed to close the file.

IT IS SO ORDERED

DATED: April 23, 2008.

_____
FRANK C. DAMRELL, Jr.
UNITED STATES DISTRICT JUDGE