UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

AREZOU MANSOURIAN; LAUREN MANCUSO; NANCY NIEN-LI CHIANG; CHRISTINE WING-SI NG; and all those similarly situated,

    Plaintiffs,

  v.

BOARD OF REGENTS OF THE UNIVERSITY OF CALIFORNIA at DAVIS; LAWRENCE "LARRY" VANDERHOEF; GREG WARZECKA; PAM GILL-FISHER; ROBERT FRANKS; and LAWRENCE SWANSON,

    Defendants.
_____/

NO. CIV. S-03-2591 FCD EFB

MEMORANDUM AND ORDER

----oo0oo----

    This matter is before the court on the parties' cross-motion in limine to clarify the relevant time period for plaintiffs Arezou Mansourian, Lauren Mancuso, and Christine Wing-Si Ng's (collectively "plaintiffs") Title IX claim against defendant Board of Regents of the University of California at Davis ("defendant"). Plaintiffs assert that the relevant time period

for analyzing whether defendant has a history and continuing practice of program expansion should extend back to 1972. Conversely, defendant asserts that the relevant time period for assessing Title IX compliance is between 1995 and 2006.

Title IX, 20 U.S.C. § 1681, et seq., provides, "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." In 1975, the Department of Education (the "DOE") issued the Title IX regulation pertaining to athletics, 34 C.F.R. 106.41, which further clarifies that "[n]o person shall, on the basis of sex, be excluded from participation in, be denied the benefits of, be treated differently from another person or otherwise be discriminated against in any interscholastic, intercollegiate, club or intramural athletics offered by a recipient." In 1979, the Department of Health, Education, and Welfare[1] issued a Policy Interpretation, 44 Fed. Reg. 71,413, to assist schools with compliance with Title IX.[2]

A university's athletics program is Title IX-compliant if it satisfies one of the following conditions:

> (1) . . . [I]ntercollegiate level participation opportunities for male and female students are provided

---

[1] The OCR later was authorized by Congress to issue Title IX's regulations with respect to athletic opportunities. See Pub.L. No. 93-380, 88 Stat. 612 (1974).

[2] The Ninth Circuit has held that both the Policy Interpretation and the Clarification are entitled to deference. Mansourian v. Regents of Univ. of Cal., 602 F.3d 957, 965 n.9 (9th Cir. 2010).

2

```
        in numbers substantially proportionate to their
        respective enrollments; or

        (2) Where the members of one sex have been and are
        underrepresented among intercollegiate athletes, . . .
        the institution can show a history and continuing
        practice of program expansion which is demonstrably
        responsive to the developing interest and abilities of
        the members of that sex; or

        (3) Where the members of one sex are underrepresented
        among intercollegiate athletes, and the institution
        cannot show a continuing practice of program expansion
        such as that cited above, . . . it can be demonstrated
        that the interests and abilities of the members of that
        sex have been fully and effectively accommodated by the
        present program.
```

Neal v. Bd. of Trustees of the Cal. State Univ., 198 F.3d 763, 769 (9th Cir. 1999) (quoting 44 Fed. Reg. 71,418). This three part test reinforces that "Title IX is a dynamic statute, not a static one. It envisions continuing progress toward the goal of equal opportunity for all athletes." Id. In this case, defendant is relying on its alleged compliance with the second prong of the three part test.

In its 1996 Clarification of Intercollegiate Athletics Policy Guidance: The Three-Part Test (the "Clarification"), the OCR stated that under the second prong of the three part test, an institution can demonstrate compliance with Title IX by showing "that it has a history and continuing practice of program expansion which is demonstrably responsive to the developing interests and abilities of the underrepresented sex." (Ex. B to Def.'s Trial Brief, at 5.) The Clarification also expressly provides the analysis the OCR will conduct to assess compliance with the history of program expansion component of prong two. Specifically, it provides, "OCR will review *the entire history of the athletic program*, focusing on the participation opportunities

3

provided for the underrepresented sex." (Id. (emphasis added).) However, "[t]here are no fixed intervals of time within which an institution must have added opportunities" nor "is a particular number of sports dispositive." (Id.) "Rather, the focus is on whether the program expansion was responsive to developing interests and abilities of the underrepresented sex." (Id.) The OCR considers, *inter alia*, (1) "an institution's record of adding intercollegiate teams, or upgrading teams to intercollegiate status, for the underrepresented sex"; (2) "an institution's record of increasing the number of participants in intercollegiate athletics who are members of the underrepresented sex"; and (3) "an institution's affirmative responses to requests by students or others for addition or elevation of sports." (Id. at 6.)

    The 1996 Clarification also provides examples of what may constitute compliance with the second prong, which demonstrate that while analysis focuses on the entire history of a University's athletic program, the relevant time period for finding compliance may be shorter based upon more recent aggressive expansion. For instance:

> Institution F started its women's program in the early 1970s with four teams. It did not add to its women's program until 1987 when, based on requests of students and coaches, it upgraded a women's club sport to varsity team status and expanded the size of several existing women's teams to accommodate significant expressed interest by students. In 1990 it surveyed its enrolled and incoming female students; based on that survey and a survey of the most popular sports played by women in the region, Institution F agreed to add three new women's teams by 1997. It added a women's team in 1991 and 1994. Institution F is implementing a plan to add a women's team by the spring of 1997. Based on these facts, OCR would find Institution F in compliance with part two. Institution

4

>F's program history since 1987 shows that it is committed to program expansion for the underrepresented sex and it is continuing to expand its women's program in light of women's developing interests and abilities.

(Id. at 7.) The handful of decisions that have examined the second prong both before and after the 1996 Clarification is consistent with this approach. See Cohen v. Brown Univ., 809 F. Supp. 978, 981, 991 (D.R.I. 1992), aff'd, 991 F.2d 888 (1st Cir. 1993) (examining the defendant university's history of program expansion from the late 1970s); Roberts v. Colo. State Bd. of Agriculture, 998 F.2d 824, 830 (10th Cir. 1993) (examining university's history of program expansion for women starting in the 1970s); Bryant v. Colgate Univ., 1996 WL 328446, at *10-11 (N.D.N.Y. June 11, 1996) (examining the defendant university's history of program expansion from 1972 when the university first offered women's sports); Barrett v. West Chester Univ., 2003 WL 22803477, at *7 (E.D. Pa. Nov. 12, 2003) (considering entire history of expansion, where the first team was added in 1979).

    Based upon the principles of Title IX, the guidance provided in the 1996 Clarification, and case law discussing prong two of the three part test, the court concludes that the court must *review* the *entire history* of the athletic program in determining whether defendant was compliant with Title IX when plaintiffs were students. While a shorter, more current period of aggressive remedial efforts may be highly relevant to establishing compliance with prong two, the "dynamic" nature of Title IX, which calls for continuing progress toward the goal of equal opportunity, requires that the court look at the entirety of the program as a whole. See Neal, 198 F.3d at 769.

5

Defendant's argument relating to standing is inapposite. Both plaintiffs and defendant agree that plaintiffs may only recover based upon demonstration of actual harm. Indeed, plaintiffs' ability to recover for Title IX violations are wholly separate from the determination of whether defendant was in violation of Title IX. As such, defendant's argument in support of a truncated time period is without merit.

IT IS SO ORDERED.

DATED: April 29, 2011

FRANK C. DAMRELL, JR.
UNITED STATES DISTRICT JUDGE

6